Stephenson, J.
 

 We quite agree with counsel that the record in this case presents three questions, namely:
 

 1. Is the death of an employee from injuries received while proceeding to his work and after reaching the premises of his employer but before arriving at the point where his active duties began, sustained in the course of employment?
 

 2. Did the open shop conditions of the mine where Gregory was injured subject him to a hazard greater than that to which the general public in the community was subjected, and thereby establish a causal connection between the employment and the injury?
 

 3. Was there causal connection between Gregory’s injuries and his death?
 

 If the open shop condition of the mine where Gregory was employed at the time of his injury subjected him to a hazard greater than that to which the general public in the community was subjected, then a causal connection was as a matter of fact established between the employment and his injuries.
 

 We do not regard it as necessary to go back and review the old cases, as that has been taken care of in the recently reported case of
 
 Industrial Commission
 
 v.
 
 Carden, ante,
 
 344.
 

 The case of
 
 Industrial Commission
 
 v.
 
 Nelson,
 
 127 Ohio St., 41, 186 N. E., 735, furnishes the nucleus for the law that we will apply in this case. We quote two paragraphs of the syllabus of that case, as follows:
 

 “1. An injury is not compensable, under the workmen’s compensation law of this state, unless the employment has some causal connection with the injury,
 
 *368
 
 either through its activities, its conditions or its environments.
 

 “2.
 
 But whenever the conditions attached to the place of employment are factors in causing injury to a workman engaged therein, such injury arises out of the employment and is compensable.”
 

 Defendant in error insists that the open shop conditions at the Thompson mine were not sufficient upon which to predicate a hazard greater than that to which the general public in the community was exposed, because no strike at that mine was actually in progress. We do not regard this ground as tenable. This mine was in the Ohio mining district, just a short distance from the Hocking Valley mines that were unionized. The workmen at the Thompson mine had been notified that they would receive a visit from the Hocking Valley miners, and they made their word good. An open shop in a unionized district is not conducive to passivity. The proximity of union and non-union enterprises of itself creates more or less of a hazard. It is a condition in the one sense and an environment in the other. It is our holding that the open shop condition of the Thompson mine did subject Gregory to a hazard greater than that to which the general public in the community was subjected.
 

 There is one other remaining question, namely, was Gregory within the zone of his employment when injured?
 

 It was Gregory’s duty to hitch the ponies to the wagon in order to engage in his regular business of hauling coal. He was on the company’s property, probably two hundred yards from the barn or stable where the'ponies were kept and two hundred and fifty yards from the mine, when he was intercepted by these men, presumably from the Hocking Valley. His real work, it is true, would not begin until he had arrived at the barn or stable and made some movement toward harnessing the ponies. But was he within the zone of
 
 *369
 
 Ms employment as that term has been heretofore defined by this court?
 

 In 49 A. L. R., at page 433, the general proposition is laid down, as follows:
 

 “It is generally held that an injury sustained by a miner, while proceeding, on the premises of his employer, to his place of employment, or an injury sustained while preparing to begin his day’s work, * * * arises out of and in the course of the employment, within the meaning of the act.”
 

 This is rather a broad statement, but the Ohio authorities are in accord with it in the main. Take the case of
 
 Industrial Commission
 
 v.
 
 Barber,
 
 117 Ohio St., 373, 159 N. E., 363:
 

 “An employe, who for the purpose of reaching his place of employment travels a course wMch affords the only unobstructed access thereto, enters upon the course of his employment within the contemplation of the Workmen’s Compensation Law when he reaches the zone of such employment that is under the control of his employer, even though such zone be outside the inclosure of his employer.”
 

 To the same effect is the case of
 
 Kasari
 
 v.
 
 Industrial Commission,
 
 125 Ohio St., 410, 181 N. E., 809, 82 A. L. R., 1040. We quote the first and second paragraphs of the syllabus, as follows:
 

 “1. An employe, entering the premises of his employer to begin the discharge of the duties of his employment but who has not yet reached the place where his service is to be rendered, is discharging a duty to his employer which is a necessary incident to his day’s work.
 

 “2. Traversing the zone between the entrance of the employer’s premises and the plant where an employe is employed, is one of the hazards of the employment.”
 

 Next we find that this theory is followed in the case of
 
 Industrial Commission
 
 v.
 
 Baker,
 
 127 Ohio St., 345,
 
 *370
 
 188 N. E., 560. The second paragraph of the syllabus in that case reads as follows:
 

 “An injury sustained by an employe, after reaching the zone of his employment under the control of his employer, even though outside the enclosure constituting his place of work, is compensable.”
 

 It was Gregory’s duty to hitch the ponies, and the attacking party probably was aware of that fact. They followed the dictates of common sense and went to the mine property and lay in wait for the employees, one of whom was Gregory. The testimony is overwhelming to the effect that he was kicked and beaten and, leaving out of consideration any declaration or. exclamation of pain that he made to his fellow employees, the physical fact, as detailed by those who saw him at intervals after the injury, that he walked in a stooped-over condition, is sufficient evidence of an injury out of the ordinary. He endeavored to work for a man who had employed him previously. He managed to work one day. The testimony of this employer was to the effect, that before his injury he was a splendid workman; that upon the day in particular he had great difficulty in performing his tasks.
 

 There was certain sufficient testimony to warrant the finding that his injury was at least a contributing cause of death, as different witnesses testified that he vomited clotted blood by the handful. That he died from scarlet fever is little more than an insinuation insofar as the record is concerned.
 

 From all the facts in this case we find that Gregory was the victim of a continuous condition that existed at the Thompson mine, the place where he was employed at the time of injury; that by reason of such condition he was subjected to a greater hazard than that common to the general public in the community; that he was injured while within the zone of his employment and that there was evidence from which it could be logically and reasonably inferred that his in
 
 *371
 
 juries contributed to produce Ms death, maMng Ms case thereby compensable.
 

 The judgment of the Court of Appeals is reversed and that of the Common Pleas Court affirmed.
 

 Judgment of Court of Appeals reversed and judgment of Court of Common Pleas affirmed.
 

 Weygandt, C. J., Williams, Jones, Day and Zimmerman, JJ., concur.