LITTLEFIELD, APPELLANT, *v.* PILLSBURY COMPANY ET AL., APPELLEES.

[Cite as Littlefield *v.* Pillsbury Co. (1983), 6 Ohio St. 3d 389.]

(No. 82-1488—Decided August 31, 1983.)

*Clark & Eyrich Co., L.P.A., Mr. Stephen T. MacConnell, Mr. Augustine Giglio* and *Mr. David S. Levine,* for appellant.

*Mr. Richard L. Martin* and *Mr. William D. Snyder,* for appellee Pillsbury Co.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Bernard C. Fox, Jr.,* for appellee Administrator.

CELEBREZZE, C.J. Appellees contend that compensation is precluded because the accident occurred on a public street when Littlefield returned from lunch. However, we conclude, for the following reasons, that Littlefield's claim is not barred.

Our analysis begins with the fundamental requirement in R.C. 4123.01(C)

that a compensable injury must occur in the "course of, and arising out of, the injured employee's employment." The statutory mandate has been clarified and defined over the years by the judiciary. This court set forth "[t]he test of the right to participate in the Workers' Compensation Fund is not whether there was any fault or neglect on the part of the employer or his employees, but whether a 'causal connection' existed between an employee's injury and his employment either through the activities, the conditions or the environment of the employment." *Bralley* v. *Daugherty* (1980), 61 Ohio St. 2d 302, 303 [15 O.O.3d 359]; *Indus. Comm.* v. *Weigandt* (1921), 102 Ohio St. 1; *Indus. Comm.* v. *Gintert* (1934), 128 Ohio St. 129; *Fox* v. *Indus. Comm.* (1955), 162 Ohio St. 569 [55 O.O. 472].

The determination of whether an injury has occurred in the "course of and arising out of employment" has been aided by the "going and coming" rule.[1] "As a general rule where an employee, having a fixed and limited place of employment, sustains an injury while traveling to and from his place of employment, such injury does not evidence the required causal connection to the employment; it therefore does not arise out of and in the course of his employment and is not compensable." *Bralley* v. *Daugherty, supra,* at 303-304; *Lohnes* v. *Young* (1963), 175 Ohio St. 291 [25 O.O.2d 136]; *Simerlink* v. *Young* (1961), 172 Ohio St. 427 [17 O.O.2d 376]; *Indus. Comm.* v. *Gintert, supra; Indus. Comm.* v. *Baker* (1933), 127 Ohio St. 345.

The "special hazard or risk" exception is a means of avoiding the strict application of the general rule. Accordingly, an employee will be entitled to compensation, if the employment creates a special risk, for injuries sustained in the scope of that risk. A special risk may be on the employer's premises or involve the necessary means of access to the premises, even when the access is not under the employer's control or management. *Parks* v. *Workers' Compensation Appeals Bd.* (1983), 33 Cal. 3d 585, 190 Cal. Rptr. 158, 660 P.2d 382. Thus, when the injury occurs on the only route or at least on the normal route, which the employees must use to reach the premises, the special hazards of that route may become hazards of the employment. See 1 Larson, The Law of Workmen's Compensation (1982), Section 15:13.

This exception has been applied by other jurisdictions in left-turn cases. For example, in *Pacific Indemn. Co.* v. *Indus. Acc. Comm.* (1946), 28 Cal. 2d 329, 170 P.2d 18, the employee's route to work required a left-turn across oncoming traffic to enter the company parking lot. The court found that the required left turn was a special risk of the employment and held that the injury occurred in the course of employment. Similarly, the court applied the excep-

---

[1] The going and coming rule has been criticized as having "produced many harsh results which led courts to carve out numerous exceptions to it." *Hammond* v. *Great Atlantic & Pacific Tea Co.* (1970), 56 N.J. 7, 11, 264 A. 2d 204. Furthermore, it has been suggested that the rule should be abandoned altogether as being out of touch with the dangers inherent in today's commuter-oriented society in which travel to and from work may be more dangerous than the work itself. *Id.* at 13.

tion in another left-turn situation on a public highway in *Greydanus* v. *Indus. Acc. Comm.* (1965), 63 Cal. 2d 490, 47 Cal. Rptr. 384, 407 P.2d 296.

In *Husted* v. *Seneca Steel Service, Inc.* (1976), 41 N.Y.2d 140, 391 N.Y. Supp. 2d 78, the claimant's car was struck on a public highway as he was turning into his employer's parking lot. The court concluded that a special hazard exists for making a left turn across traffic to the only means of access to the premises. The court stated that "the mere fact that the accident took place on a public road or sidewalk may not *ipso facto* negate the right to compensation * * * [w]hen the employee advances to the point where he is engaging in an act or series of acts which are part and parcel of the entrance into the employment premises, the test of compensability is whether there is such a relationship existing between the accident and the employment as to bring the former within the range of the latter * * * or, stated differently, whether the accident happened as an incident and risk of employment * * *." *Id.* at 144.

Other states have applied the exception to post-workday injuries occurring off the employer's premises. For example, the Supreme Judicial Court of Maine held that the accident, which occurred as the claimant was leaving the employer's private road and making a right turn onto a public road, was compensable because the high snow banks created a blind exit. *Oliver* v. *Wyandotte Industries Corp.* (Me. 1973), 308 A.2d 860, 863. The court noted that " 'whenever the hazards of employment spill over the boundary line and injure an employee on his way to work, his injury arises within the statutory space limitations of the employer's premises and is compensable as having arisen in the course of the employment.' " *Id.,* quoting from *Nelson* v. *St. Paul Dept. of Edn.* (1957), 249 Minn. 53, 58, 81 N.W. 2d 272.

Although Ohio has not specifically enunciated the special hazards exception, we have said that a compensable injury need not occur on the premises. "Compensability, however, is not in every instance limited to injuries sustained on the employer's premises." *Bralley* v. *Daugherty, supra,* at 304.

In *Sebek* v. *Cleveland Graphite Bronze Co.* (1947), 148 Ohio St. 693 [36 O.O. 282], this court stated in paragraph three of the syllabus that "[t]o be entitled to workmen's compensation, a workman need not necessarily be injured in the actual performance of work for his employer. It is sufficient if he is injured in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment."

Ohio courts have also concluded that an employee is no longer subject to the strict application of the general rule excluding compensation for going and coming to work once the zone of employment is reached. *Marlow* v. *Goodyear Tire & Rubber Co.* (1967), 10 Ohio St. 2d 18 [39 O.O.2d 11]; *Gregory* v. *Indus. Comm.* (1935), 129 Ohio St. 365 [2 O.O. 370]; *Kasari* v. *Indus. Comm.* (1932), 125 Ohio St. 410. Although the injury occurred on a public street, maintained by the employer, this court found that the claimant had reached the zone of employment in *Indus. Comm.* v. *Barber* (1927), 117 Ohio St. 373. The court allowed compensation and noted that the employee had no

option but to pursue a given course. The court stated that compensation should be allowed "where the conditions under the control of an industrial plant are such that the employee has no option but to pursue a given course with reference to such conditions and environments * * * [and] when an employee receives an injury attributable to such conditions and environments there is a direct causal connection between his employment and his injury * * *." *Id.* at 381.

Young's treatise on Ohio workers' compensation law states that "the theme of the decisions which have considered the geography aspects of course of employment are uniform in noting that the environment of the employment may extend out beyond the premises of the employer and that the additional territory is described as being within the zone of employment. Environment means the capability of producing injury and it is usually described as the existence of hazards that are peculiar to the employment as contrasted with hazards that are likely to exist anywhere and bear no relationship to the employment." Young, Workmen's Compensation Law of Ohio (2 Ed. 1971) 83, Section 5.7.

Young notes that the control of the area or zone in which the injury occurred has been a significant factor in establishing the injury occurred in the course of the employment. However, a hazard may exist in an area beyond the control of the employer. In appropriate cases, a special hazard may "form a basis for causation to satisfy the requirement of the component, arising out of employment." *Id.*

A special hazard peculiar to the employment was the basis for awarding compensation in an earlier Ohio case. Justice Robert E. Holmes stated that "I believe that the decision in *Indus. Comm.* v. *Henry* (1932), 124 Ohio St. 616, was primarily based upon the rationale of a 'special hazard' being present." *Baughman* v. *Eaton Corp.* (1980), 62 Ohio St. 2d 62, 64 [16 O.O.3d 45] (dissenting opinion). In *Henry,* compensation was allowed when an employee sustained fatal injuries in crossing a railroad track which was immediately adjacent to the sole means of ingress and egress to his employer's plant.

Thus, this court has found exceptions to the strict application of the going and coming rule. Compensation has been allowed for injuries which have occurred off the premises when there has been a causal connection between the injuries and the employment.

Based upon the aforementioned cases, we join other jurisdictions in adopting a special hazard rule which allows compensation for injuries occurring off the work premises, before or after work, if the injury occurs because of the hazard created by the employment. This position is consistent with the test this court has used to determine the right to compensation, whether a causal connection exists between an employee's injuries and the activities, conditions or environment of the employment. *Weigandt, supra.* We agree with the New York Court of Appeals that the mere fact that an accident took place on a public street does not *ipso facto* negate the right to compensation.

*Husted, supra.* Instead the totality of the circumstances should be considered when applying the causal connection test of *Weigandt.*

To aid in determining whether the special hazard rule should apply, we adopt the two-prong test devised by the California Supreme Court. *General Ins. Co. v. Workers' Comp. Appeals Bd.* (1976), 16 Cal. 3d 595, 128 Cal. Rptr. 417, 546 P.2d 1361, held that the rule will apply "(1) if 'but for' the employment, the employee would not have been at the location where the injury occurred and (2) if the 'risk is distinctive in nature or quantitatively greater than risks common to the public.' " *Parks, supra,* at 160, quoting *General Ins. Co.,* at 601.

Applying these principles to the case *sub judice,* the facts are similar to those which constituted a special hazard in *Henry, supra.* As stipulated by the parties, Littlefield and his co-worker chose the closest available lunch facility, approximately one eighth of a mile from the plant. They returned by the necessary and most direct possible route. As they waited to make a left turn, with the left-turn signal on, into the only means of ingress and egress to the plant, the car was struck from the rear. Thus, in both cases the accident occurred immediately adjacent to the sole means of ingress and egress to the employer's plant.

Furthermore, applying the California test for a special hazard, the first prong of a test is met. It is clear that "but for" his employment, Littlefield would not have been making a left turn into the plant. The second prong of the test is also satisfied because, although the risk attendant to the busy road was common to the general public using it, Littlefield's risk was peculiar and to an abnormal degree. That is, his risk was "quantitatively greater" than that to which other motorists occasionally driving down the road are subjected. The regular exposure to the common risk plus the risk of making a left turn creates a greater degree of risk and sustains the causal relationship between the employment and the accident resulting from the risk.

This conclusion is buttressed by the fact that Littlefield had already reported for work and was merely on an overdue break compared to the claimants in other jurisdictions, which apply the special hazard rule, who were going to work or leaving after the workday. Littlefield was scheduled to work a twelve-hour day, had been required to work through a fifteen minute paid morning break as well as an unpaid thirty minute lunch break. The stipulations also indicate that "[Pillsbury] occasionally paid directly for beverages and food at this restaurant on behalf of its employees who worked extra hours, and on other occasions at the discretion of [Pillsbury]."

In comparison, the record in *Henry, supra,* indicates that the employee arrived for work about 2:00 a.m. After about an hour on the job, he left the premises for breakfast at a nearby restaurant and the accident occurred as he returned to work. The off-premises breakfast practice was acquiesced in by the employer as it contributed to the workers' efficiency. The court concluded that it was a custom incidental to the employment. *Id.* at 620-621. Thus, compared to *Henry,* Littlefield had worked many more hours before

taking an overdue break. Therefore, the break should have contributed more to his productivity than to the worker in *Henry* and could similarly be considered incidental to the employment.

We are mindful that R.C. 4123.95 requires that sections 4123.01 to 4123.94, inclusive, be liberally construed in favor of employees. Therefore, we agree with courts of other jurisdictions which have adopted the special hazard rule. That is, an employee will be entitled to workers' compensation benefits when the employment creates a special hazard and the injuries are sustained because of that hazard. When a special hazard causes an injury to an employee on his way to or from work, the injury is compensable as arising out of the employment. See R.C. 4123.01(C) and *Weigandt, supra.*

The facts of this case satisfy the two-pronged test for applying the special hazard rule. Therefore, Littlefield should not be precluded from recovering compensation. Accordingly, we reverse the judgment of the court of appeals.

*Judgment reversed.*

SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

C. BROWN, J., concurs separately.

W. BROWN, LOCHER and HOLMES, JJ., dissent.

CLIFFORD F. BROWN, J., concurring. The superb analysis of the facts and law by Chief Justice Celebrezze in reaching a just result is not charting a new course in Ohio, but is only following past precedent, particularly this court's landmark decision in *Indus. Comm.* v. *Henry* (1932), 124 Ohio St. 616. As accurately and carefully analyzed in the majority opinion, *Henry* is on all fours factually with *Littlefield.* To deny compensation to Littlefield would be a retreat from *Henry* into some era of the Dark Ages of jurisprudence, completely ignoring the rules pertaining to causal connection between an employee's injury and his employment.

Such a disregard of *Henry* as legal precedent would be an expression of judicial defiance of the legislative mandate in R.C. 4123.95 that R.C. Chapter 4123 must be liberally construed in favor of employees.

As in *Henry,* claimant Littlefield at the time of his injury was returning from a meal break for a period of time for which he was being paid by the company. Just as this court decided in *Henry,* Littlefield therefore was on duty in the service of his employer performing his work, during a lunch break which was incidental to his employment, when he was injured.

In their zeal to deny compensation to Littlefield, the court of appeals and appellees have relied heavily on *Bralley* v. *Daugherty* (1980), 61 Ohio St. 2d 302 [15 O.O.3d 359], to the point of misconstruing the case. Such zeal was not matched by sound reasoning. Unlike Littlefield, Bralley received the injury

"while en route to her place of employment." *Id.* at 302. Unlike Littlefield, Bralley's "injury did not occur during the time of actual employment and was sustained over one-third of a mile from the place of employment rather than 'immediately adjacent' thereto as in *Henry, supra.*" *Id.* at 305. Littlefield's injury was sustained on a highway adjacent to the employer's premises.

Bralley, by being en route to her place of employment and not on the job, was not paid for the period during which her accident and injury occurred. On the other hand, Littlefield was on paid time of employment incident to his lunch period when he was injured.

Clearly, this court did not decide *Henry* on the basis of the railroad tracks and crossings, as opposed to highway crossings, but on the basis of the employment environment creating a hazard. That hazard in *Littlefield* was ongoing heavy truck traffic at the point where the highway and the employer's plant entrance met, similar to the hazard at the railroad crossing in *Henry*.

The result we reach today is also consistent with *Baughman v. Eaton Corp.* (1980), 62 Ohio St. 2d 62 [16 O.O.3d 45], which held that an employee's injury, sustained while the employee was walking across a street between the company parking lot and entrance, was compensable.

LOCHER, J., dissenting.

I

Today's decision will ruin the Workers' Compensation Fund in Ohio. The majority has elected to state a broad rule in the syllabus which effectively insures *all* risks, coming and going, portal to portal and beyond. The judicious way to dispose of this case is through a *per curiam* opinion limited to the facts, applying established principles of *Ohio* law. See Rules 1(B) and (C) of the Supreme Court Rules for the Reporting of Opinions, effective March 1, 1983.

In effect, the majority has legislated a universal super-insurance without actuarial basis *via* the Workers' Compensation Fund. Endless ramifications are certain to follow, because the majority position creates insurance without consideration of moral hazard. That is, an employee who is negligent on his way to or from work can now recover from his employer for his own damages. Furthermore, there is no reason to expect that the damages done to third parties will not result in claims against employers. That is, if the injury is "* * * received in the course of, and arising out of, the injured employee's employment [R.C. 4123.01(C)]," then the damage done to third parties certainly occurs in the scope of that employment, and *respondeat superior* applies.

All of this creates another uncontrollable cost of doing business and another reason for doing business elsewhere. For example, fixed-situs service employees typically encounter much less on-the-job risk than do industrial employees. Yet, the majority deems commuting to work to be an appropriate

cost for all employers to bear. Just as the economies of Ohio and the entire country are adjusting away from industry toward more services, the majority creates a new burden for service employers.

Liability under the Workers' Compensation Fund will now also extend into employees' homes. We need only examine the two-pronged standard in the second paragraph of the syllabus to understand why.

"But for" their jobs, many employees would not live in a certain "location" which may, for example, have convenient access to the employer's place of business. Furthermore, given the facts of this case, future claimants need not take the "distinctive in nature or quantitatively greater" risk standard seriously. That is, in today's Ohio there is nothing either distinctive or exceptionally risky about making a left-hand turn.

By comparison, therefore, employees who bathe at home before leaving for work each morning because they are expected to "look good on the job" will have viable workers' compensation claims should they slip in the bathtub. Their employment creates the "distinctive" risk of good hygiene, and recovery — under the majority view — naturally follows.

At the very least, the holding and facts of this case make compensable the injuries of an employee who negligently makes a left-hand turn from a public road anywhere along that employee's commute to or from work or during his lunch hour. It is difficult to comprehend why anyone should accept responsibility for insuring risks such as those, except the people best able to minimize them — the employees themselves.

I recognize that R.C. 4123.95 requires that we construe workers' compensation statutes liberally. Certainly, we should strive to ensure that injured workers recover for every compensable injury for which there is a legitimate, work-related basis. Yet, the majority syllabus and opinion are both so broad that this case will wreak havoc on the Workers' Compensation Fund and ultimately harm the workers whom the fund is intended to protect.

I must, therefore, dissent from both the result and the rationale of the majority.

## II

A close examination of the majority's analysis and the authority used to support it demonstrates the impropriety of the rationale and result in this case.

In the majority's two-pronged special hazard or risk rule, the first step is to establish that " 'but for' the employment, the employee would not have been at the location where the injury occurred * * *." Yet, the majority fails to acknowledge that the "but for" rule in tort law is only used to *exclude* negligent defendants from liability rather than establish a basis for liability. See Prosser, Law of Torts (4 Ed. 1971) 238-239, Section 41; Restatement of the Law 2d, Torts, Section 432(1).

Furthermore, the "but for" standard does not meet the established

criterion in Ohio for a satisfactory "causal connection" between the employment and the resultant injury.

"An injury does not arise out of the employment, within the meaning of the Workmen's Compensation Act, unless there is a *proximate causal relationship* between the employment and the injury." *McNees* v. *Cincinnati Street Ry. Co.* (1949), 152 Ohio St. 269 [40 O.O. 318], paragraph six of the syllabus. (Emphasis added.)

Additionally, the majority has consistently strained the use of authority from Ohio and other states to serve its purposes. It is essential that we examine the applicability of each of these cases to the issues before us today.

Central to the majority's approach is *Parks* v. *Workers' Compensation Appeals Bd.* (1983), 33 Cal. 3d 585, 190 Cal. Rptr. 158, 660 P. 2d 382. Parks was a school teacher working in the Watts area of Los Angeles. "Parks left the building and went to her car in the school parking lot. As was customary, she and a number of other teachers left work together for their own safety.

"On this day, Parks drove to the exit of the lot and turned left onto Compton Boulevard. After she had driven one to two car lengths on Compton, the traffic was halted by a group of departing school children who were crossing the street between the cars. Parks found herself in a line of cars, boxed in from both the front and the rear. She had no choice but to wait until the children cleared the street.

"At that moment, three youths pulled open the driver's door on Parks' car, wrestled her purse away from her and fled." 190 Cal. Rptr., at 159. Parks claimed that this assault resulted in physical and emotional trauma.

Certainly, the departure of the *school children* was an activity directly related to her employment, and *they* caused her car to be immobilized and waiting in traffic. Littlefield, however, suffered his injuries as part of a common risk of the road. There is no evidence that the oncoming traffic or the truck which injured Littlefield had any relationship to Pillsbury's business.[2]

In *Parks,* the court also noted its prior decision in *General Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1976), 16 Cal. 3d 595, 128 Cal. Rptr. 417, 546 P. 2d 1361. The employee in *General Ins. Co.,* Chairez, had parked his car in front of his place of employment. As he left his car, he was struck by a passing motorist and died. "However, Chairez' death does not come within the second requirement of the special risk exception — that the risk is distinctive in nature or quantitatively greater than risks common to the public. Chairez was parked on a public street at a time and in a location where parking is available to the general public. The fact that he was struck by a passing motorist, while tragic, is a type of risk the public is subject to daily. Moreover, nothing in the facts indicates Chairez was exposed to a greater

---

[2] *Nelson* v. *St. Paul Dept. of Edn.* (1957), 249 Minn. 53, 81 N.W. 2d 272, is very similar to *Parks*. Nelson was also a school teacher who was walking *to* work and adjacent to the school playground when she was injured by a ball which was hit from the playground by one of the *school children.* Again, there is a *direct* relationship to her employment, unlike the facts of this case.

risk from passing motorists than was anyone else on La Cienega that morning." 16 Cal. 3d, at 601. Whatever merit the special risk framework may have, if the risk Chairez encountered is not "distinctive in nature or quantitatively greater than risks common to the public," then Littlefield's awaiting a left-hand turn is not a special risk.

Similarly, it is important to recognize that the cases which the majority views as being merely "left-hand turn" cases are not that simple. In *Pacific Indemn. Co.* v. *Indus. Acc. Comm.* (1946), 28 Cal. 2d 329, 170 P. 2d 18, the decedent-employee's auto was half in and half out of his employer's driveway when it was struck by another vehicle and then collided with a parked car *on the premises* of the employer. In *Greydanus* v. *Indus. Acc. Comm.* (1965), 63 Cal. 2d 490, 47 Cal. Rptr. 384, 407 P. 2d 296, the court merely refused to disturb the commission's finding of *fact* that the employee was within the course of his employment when he was injured. Under Ohio law, however, the injury must be "* * * received in the course of, *and arising out of,* the injured employee's employment." R.C. 4123.01(C). (Emphasis added.) Furthermore, the Industrial Commission in this case refused Littlefield's appeal from a ruling of the regional board of review which was adverse to him. The underlying finding of fact, therefore, is that Littlefield was *not* in the zone of his employment.

The majority's reliance on California authority is questionable. We should recognize that California permits employees to recover for injuries occurring within " ' "* * * a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done." ' " *Parks, supra* (190 Cal. Rptr.), at 161. In Ohio, however, we must consider a number of elements including whether the employer has *control* over the location at which the injury occurred. *Lord* v. *Daugherty* (1981), 66 Ohio St. 2d 441 [20 O.O.3d 376]; *Bralley* v. *Daugherty* (1980), 61 Ohio St. 2d 302 [15 O.O.3d 359].

Likewise, the majority's other out-of-state authorities are distinguishable. *Husted* v. *Seneca Steel Service, Inc.* (1976), 41 N.Y. 2d 140, 391 N.Y. Supp. 2d 78, involved an employee whose serious injuries resulted when his car collided with a car parked in the employer's parking lot after being struck by another automobile on the street one foot away from the employer's premises. Littlefield's injuries occurred *off* the employer's premises.

In *Oliver* v. *Wyandotte Industries Corp.* (Me. 1973), 308 A. 2d 860, modified on other grounds (1976), 360 A. 2d 144, the employee was injured as she entered a public road from a private road controlled by the employer. The private road was icy and slippery. Six feet of snow was piled up at the intersection. Littlefield's employer, of course, did not have *control* over the public road on which Littlefield was injured nor were there any extraordinary road conditions in evidence on the day he was injured.

The majority also cites Ohio authorities which fail to support its conclusion.

For example, we should distinguish *Sebek* v. *Cleveland Graphite Bronze*

*Co.* (1947), 148 Ohio St. 693 [36 O.O. 282], overruled regarding the distinction between injury and occupational disease in *Johnson* v. *Indus. Comm.* (1955), 164 Ohio St. 297, paragraph four of the syllabus, and at 307-308; but, see, *e.g.,* R.C. 4123.57. "An *employee in a cafeteria,* who received certain meals as a part of her compensation under her contract of hire and who allegedly *contracted ptomaine poisoning from eating contaminated food furnished by her employer* at one of such meals, sustained an injury in the course of and arising out of her employment within the purview of the Workmen's Compensation Act and could not successfully maintain a civil action for damages on account of such injury against her employer who had complied with the provisions of such act." *Sebek, supra,* paragraph four of the syllabus (emphasis added). Sebek was *on the premises* of the employer when she ate the contaminated food at the cafeteria at which she worked. Littlefield was *off the premises* when he was injured. His driving to lunch was also not "incidental to his employment," *Sebek, supra,* paragraph three of syllabus, as well as paragraphs one and two. See, also, *Indus. Comm.* v. *Henry* (1932), 124 Ohio St. 616, discussed *infra* in Part III.

Likewise we can distinguish *Marlow* v. *Goodyear Tire & Rubber Co.* (1967), 10 Ohio St. 2d 18 [39 O.O.2d 11], on the facts as stated in the syllabus: "An employee who, on his way from the fixed situs of his duties after the close of his work day, is injured in a collision of his automobile and that of a fellow employee occurring in a *parking lot* located adjacent to such situs of duty and *owned, maintained and controlled by his employer for the exclusive use of its employees,* receives such injury 'in the course of, and arising out of' his employment, within the meaning of that phrase in the Workmen's Compensation Act, Section 4123.01(C), Revised Code. (*Gregory* v. *Industrial Commission,* 129 Ohio St. 365 [2 O.O. 370]; *Kasari* v. *Industrial Commission,* 125 Ohio St. 410; *Industrial Commission* v. *Henry,* 124 Ohio St. 616; *Industrial Commission* v. *Barber,* 117 Ohio St. 373; and *DeCamp* v. *Youngstown Municipal Ry. Co.,* 110 Ohio St. 376, followed.)" (Emphasis added.) Again, Marlow was in the parking lot which his *employer controlled.* See, also, *Baughman* v. *Eaton Corp.* (1980), 62 Ohio St. 2d 62 [16 O.O.3d 45]. By contrast, Littlefield was *off his employer's premises,* on a public road over which his employer had *no control.*

*Gregory* v. *Indus. Comm.* (1935), 129 Ohio St. 365 [2 O.O. 370], is similarly an inappropriate authority. Gregory was employed as a coal miner and was injured as a result of an assault.

"It being the duty of such miner to-haul coal from the mine with a pair of ponies and it being his further duty to harness the ponies preparatory to hauling, if, while proceeding to the barn where the animals were kept and while *on his employer's premises* within approximately two hundred yards of such barn and two hundred and fifty yards from the mine, such miner is injured, such injury is received within the zone of his employment." *Gregory, supra,* paragraph two of the syllabus. (Emphasis added.) Once again, the fact

that Gregory was *on his employer's premises* distinguishes *Gregory* from this case.

Paragraph two of the syllabus of *Kasari v. Indus. Comm.* (1932), 125 Ohio St. 410, states:

"Traversing the zone *between the entrance of the employer's premises and the plant* where an employe is employed, is one of the hazards of the employment." (Emphasis added.) Kasari was clearly *on his employer's premises* as were Sebek, Marlow and Gregory. Littlefield was *off the premises* at the time of his injury.

### III

In addition to the Ohio authorities discussed in Part II, *supra*, a closer examination of other Ohio cases cited by the majority demonstrates not only the errors in the majority approach but also the proper analysis of this case. In *Bralley v. Daugherty* (1980), 61 Ohio St. 2d 302 [15 O.O.3d 359], we summarized the analytical framework for reviewing cases such as the one before us today:

"An injury sustained by an employee is compensable under the Workers' Compensation Act only if it was 'received in the course of, and arising out of, the injured employee's employment.' R.C. 4123.01(C); R.C. 4123.54; *Fassig v. State, ex rel. Turner* (1917), 95 Ohio St. 232.

"The test of the right to participate in the Workers' Compensation Fund is not whether there was any fault or neglect on the part of the employer or his employees, but whether a 'causal connection' existed between an employee's injury and his employment either through the activities, the conditions or the environment of the employment. *Indus. Comm. v. Weigandt* (1921), 102 Ohio St. 1; *Indus. Comm. v. Gintert* (1934), 128 Ohio St. 129; *Fox v. [Indus. Comm.]* (1955), 162 Ohio St. 569 [55 O.O. 472].

"As a general rule, where an employee, having a fixed and limited place of employment, sustains an injury while traveling to and from his place of employment, such injury does not evidence the required causal connection to the employment; it therefore does not arise out of and in the course of his employment and is not compensable. *Lohnes v. Young* (1963), 175 Ohio St. 291 [25 O.O.2d 136]; *Simerlink v. Young* (1961), 172 Ohio St. 427 [17 O.O.2d 376]; *Indus. Comm. v. Gintert, supra; Indus. Comm. v. Baker* (1933), 127 Ohio St. 345. An employee is no longer subject to strict application of this general rule once he reaches the premises of his employer. Injuries sustained while the employee is within this 'zone of employment' may be compensable under the Act. *Marlow v. Goodyear Tire & Rubber Co.* (1967), 10 Ohio St. 2d 18 [39 O.O.2d 11]; *Gregory v. Indus. Comm.* (1935), 129 Ohio St. 365 [2 O.O. 370]; *Kasari v. Indus. Comm.* (1932), 125 Ohio St. 410; 1 Larson, The Law of Workmen's Compensation 4-3, Section 15.11.

"Compensability, however, is not in every instance limited to injuries sustained on the employer's premises. * * *" *Bralley, supra,* at pages 303-304.

In *Bralley,* the employee's injury occurred on a road over a third of a mile away from her employer's plant. "Although Larsan [the employer] is vested with a non-exclusive easement of record over the road for purposes of ingress and egress, Larsan is not responsible for the road's maintenance, construction, repair, patrol, marking or inspection, nor does it contribute thereto." *Bralley, supra,* at 302. We concluded that "* * * the totality of facts and circumstances, as in *Indus. Comm.* v. *Baker* * * * [(1933), 127 Ohio St. 345], do not justify a finding of the causal connection requisite to participation in the fund." *Bralley, supra,* at 305.

Littlefield contends that the court's decision in *Baughman* v. *Eaton Corp.* (1980), 62 Ohio St. 2d 62 [16 O.O.3d 45]; *Indus. Comm.* v. *Henry* (1932), 124 Ohio St. 616; and *Indus. Comm.* v. *Barber* (1927), 117 Ohio St. 373, require that we find compensability in this case. These cases are distinguishable, however.

In *Baughman,* we affirmed the judgment of the court of appeals and observed that the employee "* * * parked his automobile in the only employer parking lot then available to him free of charge. His injuries occurred on the public street as he proceeded, without deviation, toward the plant entrance prior to the commencement of his shift. Finally, appellee could not reach the plant entrance without crossing the public street. On these facts, it would be unreasonable to deny appellee compensation." *Baughman, supra,* at 63. The employee in that case, therefore, was required to cross the street in order to report for work.

Littlefield, on the other hand, was on duty and could have remained at the Pillsbury plant by bringing his lunch and using the facilities provided by his employer. Instead, he left the parking area on the premises and went to another location. As a result, Littlefield falls within the general rule, as stated in *Bralley* and quoted above, that an injury received by a fixed-situs employee while coming or going to work is not compensable because the injury does not have a sufficient causal connection to his employment in order for it to arise out of and in the course of his employment. See *Bralley, supra,* at 303.

*Henry, supra,* involved a milkman who "* * * shortly after arriving on the premises of his employer * * * went to the milk plant and there handed to William Hamer, shipping clerk for the company, a card showing the quantity of milk for the day to be delivered to his customers on his route. After handing the card to Mr. Hamer, he then left the milk plant, heading in the direction of the barn on the premises of the company, and upon his arrival at the barn he proceeded to feed his horse, during which time his milk order was being filled and his wagon loaded. Subsequent to feeding the horse Henry went to the Hamburg restaurant * * * and breakfasted there, and while returning to the premises of his employer, at about 3:40 a.m., he was struck by a westbound passenger train * * *." *Henry, supra,* at 617-618.

This court further considered the facts and circumstances of that case and noted:

"The record shows that it was the custom for the men who worked during night hours at the dairy, after they had started their employment, while waiting for the orders to be filled, to go to get their breakfast, and then return to the plant. This was the practice with the men who began work at these hours, acquiesced in by the employer, evidently because it contributed to the men's efficiency. Hence it was a custom incidental to the employment, and the employer contemplated that Henry should act according to the custom." *Henry, supra,* at 620-621.

Henry's fellow employee, William Hamer, testified before a branch office deputy of the Industrial Commission. Hamer's response to questioning by counsel for Henry's widow demonstrates the extent to which Henry's breakfast trip was "incidental" to his employment: "When *on duty* what is the custom of the company with reference to their [*i.e.,* the milkmen's] getting their breakfast if they want to while *in the service of the company performing their work?* A. They have that privilege if they want to stop for lunch it is all right with the company. Never heard anything contrary to it." *Henry, supra* (case No. 23017), Record, at 27. (Emphasis added.)

Admittedly, there are some superficial similarities between *Henry* and this case. For example, Littlefield notes that he was returning to work *via* the most direct route and that the place of his injury was immediately adjacent to the sole means of ingress and egress from Pillsbury's premises. He also observes that fifteen minutes of the time which he took for lunch on the day of his injury was paid break time which he did not take in the morning. None of this, however, establishes as a matter of fact that he was "on duty" and "in the service of the company performing * * * [his] work" when he was injured. *Henry,* therefore, is not controlling.

What the majority fails to recognize is that the early-morning breakfast of the employee in *Henry* enhanced his productivity, because he was able to make his deliveries without interruption. The alternative would be to leave a wagon-load of dairy products sitting idle in the mid-summer heat of Springfield while the driver dined. Certainly, this court can take judicial notice of the fact that on July 21, 1928, the state of refrigeration techniques was such that it would be to Henry's employer's advantage to have its drivers work constantly until they completed their rounds.

"In *Indus. Comm.* v. *Barber* (1927), 117 Ohio St. 373, this court recognized that an employee could enter upon the course of his employment prior to entering the inclosure of his employer (injury sustained while employee was traveling the sole access route to his place of employment, that being a street under the employer's control, held compensable)." *Bralley, supra,* at 304. Littlefield's counsel acknowledged during oral argument, however, that the road on which Littlefield was injured was not within Pillsbury's *control. Barber,* therefore, is distinguishable from this case.

The totality of the facts and circumstances, therefore, do not establish a "causal connection" between Littlefield's employment and his injury. At the time of the accident he was on a public road over which Pillsbury exerted no

control during a lunch break which was not incidental to his employment. He was not on duty and not in the service of the company performing his work.

Proper consideration of this significant body of Ohio precedents, therefore, demonstrates that it is not necessary to embark on new law to resolve this case. Instead, we should confine our review to relevant, existing Ohio law.

Accordingly, I would affirm the judgment of the court of appeals.

W. BROWN and HOLMES, JJ., concur in the foregoing dissenting opinion.

HOLMES, J., dissenting. The majority opinion presents yet another major judicial bombardment of the laws relating to the Workers' Compensation Fund. The majority of this court has literally blown away a plethora of Ohio case law which has continuously held that the right of an employee to participate in the Workers' Compensation Fund is based upon whether or not there is a real causal connection between the employee's injury and his employment. Exemplary of such decisions are: *Indus. Comm.* v. *Weigandt* (1921), 102 Ohio St. 1; *Indus. Comm.* v. *Gintert* (1934), 128 Ohio St. 129; *Fox* v. *Indus. Comm.* (1955), 162 Ohio St. 569 [55 O.O. 472].

As aptly pointed out by Justice Locher in his dissent herein, the facts of this case should fall within the general rule as set forth in a series of Ohio cases noted in *Bralley* v. *Daugherty* (1980), 61 Ohio St. 2d 302 [15 O.O.3d 359], to the effect that an injury received by a fixed-situs employee while coming or going to work is not compensable because the injury does not have a sufficient causal connection to his employment in order for it to arise out of and in the course of his employment.

Here, a review of the totality of the facts and circumstances surrounding this injury and claim shows that the appellant was, at the time of this incident, stopped on a public road, and that such road in no manner was under the control or supervision of the Pillsbury Company. The appellant was on his lunch period for which he was unpaid, and was performing no services for or on behalf of Pillsbury. The appellant had his choice of "eating in" or going out for lunch, and he chose the latter. The choice of going out for lunch and, by so doing, to use the road in question, is not a risk incident to his employment (if it is a risk at all). Rather, it is a risk incident to traveling a public street, which is a risk not unlike that experienced every day by the public generally.

Employers, whose business establishments are somewhat removed from restaurant facilities, are now, in light of the majority opinion here, put on notice that they must establish an on-premises eating facility and require that the employees "eat in." Otherwise, pursuant to the majority here, the encountering of the normal buildup of noontime automobile traffic will establish a "special hazard" for employees which will render employers liable for any injuries received from such "special hazard" created by their employment.

The frontal assaults upon the workers' compensation laws of Ohio by this court during the past year and one half have been astounding, if not devastating. The only concluding comment that I can make is — what next!

I would affirm the judgment of the court of appeals.

W. BROWN and LOCHER, JJ., concur in the foregoing dissenting opinion.