Robinson, J.
 

 The sole question here presented is whether the presence of the decedent at the place, at the time and under the circumstances of the accident, constituted him then and there in the course of his employment. The legislation relating to workmen’s compensation is predicated on Section 35 of Article II of the Ohio Constitution:
 

 “For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen’s employment * *
 

 The pertinent parts of such legislation are Section 1465-68, G-eneral Code:
 
 ‘
 
 ‘ Every employe, * *
 
 *
 
 who is injured and the dependents of such as are killed in the course of employment, wheresoever such injury has occurred, * * # shall be paid such compensation out of the state insurance fund,” etc., and Section 1465-72, General Code: “The state liability board of awards shall disburse the state insurance fund to * * * employes
 
 * * *
 
 who have been injured in the course of their employment, wheresoever such injuries have occurred
 
 %
 
 # # J?
 

 The question in this case grows out of the seeming conflict between the pronouncement of this court in the case of
 
 Industrial Commission
 
 v.
 
 Weigandt,
 
 102 Ohio St., 1, 130 N. E., 38, wherein this court declared, “The test of right to award from the insurance fund under the Workmen’s Com
 
 *377
 
 pensation Law, for injury in the course of employment, is not whether there was any fault or neglect on the part ,of the employer, or his employes, but whether the employment had some causal connection with the injury, either through its activities, its conditions or its environments,” and its pronouncement in the case of
 
 Conrad, Adm’x.,
 
 v.
 
 Youghiogheny & Ohio Coal Co.,
 
 107 Ohio St., 387, 140 N. E., 482, 36 A. L. R., 1288, wherein this court declared, “The Ohio Workmen’s Compensation Act does not apply to employes who may he injured after the termination of their daily employment, nor when, at the time of the injury, the relationship of employer and employe has ceased to subsist.”
 

 In the
 
 Weigandt case,
 
 this court had under consideration the exact question involved in this case, with the exception that the injury there occurred within the inclosure of the employer, immediately prior to the hour when the actual work of the employe began; whereas, in this case, the injury occurred outside the inclosure, and immediately prior to the hour when his actual work as an employe was to begin.
 

 The effect of the first paragraph of the syllabus in the
 
 Conrad case
 
 is not to declare when the course of daily employment terminates, hut to declare that the course of employment does not continue after the termination of daily employment.
 

 In the
 
 Conrad case
 
 the question before the court was the construction of Section 1465-76, General Code, relative to the waiver by the employe of his right to prosecute an action for damages by his
 
 *378
 
 filing with the Industrial Commission an application for an award, and this court held that, under the facts of that case, at the time the decedent employe received his injuries his daily employment had terminated and he was not in the course of his employment; in other words, that at that time he was obeying his own will, unhampered and uncontrolled by the will of his employer. The facts upon which an award had been denied by the Industrial Commission were that the decedent, for his own convenience and advantage, had availed himself of a privilege, but not a duty, of riding toward his home in a car owned and operated by his employer for the purpose of hauling mine refuse to the top of a hill. The commission found, and this court found, that, while he was availing himself of a convenient means of reaching his home, his use of that means was not required by his employer or his employment, but was of his own choice and volition, and therefore was neither a hazard of his employment nor effective to continue him in the course of his employment by his employer beyond the period when the actual work of his employment ceased.
 

 A very different situation, and one analogous to the situation in the instant case, would have arisen had the railway car of his employer afforded the only means by which he could enter or leave the place of his employment. His use of the car in leaving his place of employment would then have been in the performance of an implied obligation of his contract, a hazard of his employment which he could not escape, arising out of a condition and
 
 *379
 
 environment of Ms employment under the control of his employer.
 

 In the instant case the contract of employment of the decedent by implication required the decedent, when he entered the plant as a pedestrian, to enter through the same gate and by the same approach to the gate that other employes entered with their automobiles, since there was no other entrance and no other approach to the entrance to the inclosure of his employer, and that, too, by way of Summit street, whether he approached from Olive street, or whether he approached along the right of way of the Baltimore
 
 &
 
 Ohio Railroad Company by trespassing upon its right of way, since either course would bring him to substantially the same position, namely, the position he was in at the time he received the injury.
 

 While all of Summit street is public property, and the public generally have a right to use it, and the public authorities the power to maintain it in any lawful manner, the record discloses that the street had been, and was, in fact, maintained, from Olive street to the plant of the Thomas Sheet Steel Company, by the Thomas Sheet Steel Company, and that it had maintained it as a common passageway for both pedestrians and vehicles and had not provided' for its pedestrian employes a separate means of access to its plant.
 

 While the exact point, at which the collision resulting in the injury and subsequent death occurred, was upon the crossing of the Baltimore
 
 &
 
 Ohio Railroad Company over Summit street, which crossing was probably maintained by the Baltimore & Ohio Railroad Company, its maintenance by the Balti
 
 *380
 
 more & Ohio Railroad Company as a common passageway for vehicles and pedestrians may be wholly attributed to the fact that the crossing was of a common passageway from one side of its right of way to a common gateway on the other side, both of which were actually, if not legally, under the control of the Thomas Sheet Steel Company. Indeed, upon the record, the matter of a separate sidewalk or pathway for pedestrians was under both the legal and actual control of the Thomas Sheet Steel Company, since it was in possession of the property along one side of that street, and, of course, the matter of a common gateway or separate gateways was under its control. So that the whole situation between Olive street and the plant of the Thomas Sheet Stee'l Company constituted a condition and an environment of the employment under the control of the employer, and the hazards of that condition and environment were hazards to which the decedent was required to expose himself in the performance of his contract of employment.
 

 It has been urged in argument, however, that if the conditions and environment of the plant of an employer are construed to extend to territory and conditions outside its inclosure the industrial insurance fund will be drawn upon to compensate for injuries occurring at all points between the place of employment and the place of abode of the employe.
 

 We do not think the apprehension is well grounded. We think the hazards occasioned by the conditions and environments of the employment contemplated in the decision of this court in the
 
 *381
 

 Weigandt case
 
 comprehend hazards arising out of the conditions and environments of the industrial plant under the control of the employer, whether such hazards are remediable or not, as distinguished from the hazards common to the public; that, where the conditions under the control of an industrial plant are such that the employe has no option but to pursue a given course with reference to such conditions and environments, the pursuance of such course is an implied obligation of the employe in his contract with such employer, and that when he, for the purpose of entering upon his employment, has entered into the sphere or zone controlled by his employer, and is pursuing a course with reference to which he has no option, he is then not only within the conditions and environments of the plant of his employer, but is then in the course of his employment; that when an employe receives an injury attributable to such conditions and environments there is a direct causal connection between his employment and his injury, and such injury falls within the class of industrial injuries for which compensation has been provided by the insurance fund of the Workmen’s Compensation Law.
 

 Judgment affirmed.
 

 Marshall, C. J., Day, Allen and Matthias, JJ.. concur.