**CALDWELL, Plaintiff, v. INDUSTRIAL COMMISSION, Defendant.**

Common Pleas Court, Tuscarawas County.

Decided May 1, 1945.*

*(Appeal Dismissed—July 26, 1945.)

Fisher, Limbach, Smith and Renner, New Philadelphia, and Thomas F. Joseph, Martins Ferry, for plaintiff.

Hugh S. Jenkins, Atty. Genl. of Ohio, and William T. Burgess, Asst. Atty. Genl., of Ohio, for defendant.

## OPINION

By LAMNECK, J.

On December 18, 1944, the Industrial Commission of Ohio on rehearing disallowed the claim of the plaintiff in this action for the death of her husband which occurred on January 7, 1942 on the ground "that the death of the decedent was not the result of an injury sustained in the course of and arising out of his employment."

To that finding she perfected an appeal to this court. At the close of all the evidence presented at the trial, both parties filed a motion for a directed verdict which requires the court to decide the issues as a matter of law without the intervention of a jury.

The decedent had been employed as a moulder for the Robinson Clay Products Company, a manufacturer of sewer pipe and kindred products, at its factory near Midvale, Ohio, for a number of years immediately prior to his death.

On the morning of January 7, 1942, the decedent proceeded to the plant of his employer at a time when the temperature was approximately zero Fahrenheit. When he arrived at the plant he walked up three flights of steep stairs to the fourth

floor. The first two flights were on the outside of the building while the third flight was inside. When he arrived at the fourth floor, the temperature on this floor was approximately 80 to 90 degrees Fahrenheit because this floor was also used as a "drying room". When he arrived at the top of the stairway, he was breathing heavily, but he walked over to his workbench a distance of approximately ninety feet and sat down on a pile of "shods" to change his street clothes to overalls, shirt and shoes which he wore while working. When he had only one leg in his overalls, he fell to the floor on his back with his head and shoulders resting against a brick wall. He died within five minutes thereafter.

For approximately two years previous to his death, the decedent was afflicted with chronic myocarditis which however did not prevent him from working regularly.

The plaintiff contends that the sudden change of temperature which the decedent underwent in going from the outside to the inside after climbing three flights of stairs so damaged his heart or so aggravated his preexisting heart condition that it accelerated his death.

Dr. V. C. Nipple, who treated the decedent for two years prior to his death and who examined him immediately thereafter, testified that "the sudden change of temperature from the outside where the temperature was approximately zero to the inside where the temperature was approximately 80 to 90 degrees caused a sudden change in the blood vessels with the resultant change in blood pressure and that this leads to a vertigo or dizzness, and this vertigo or dizziness could lead to a fall, and that the shock of the fall, plus the sudden change in temperature plus the exertion of climbing three flights of stairs, all have a direct causal relationship to death."

He also testified on cross examination that death would probably not have occurred at the time it did if he had not climbed the stairs, and undergone the sudden change of temperature.

Dr. D. W. Shumaker, who was called by the plaintiff as an expert witness, testified that there was a causal relationship between the changes of temperature and his death.

In explaining how he arrived at this conclusion, he testified that:

"Now in this particular case, this man had a myocarditis; his heart could only withstand so much complementary increased pressure and as he scaled these steps, that was pretty well taken up by the time he arrived at the top of the steps

and that accounted for his shortness of breath. In fact, persons even in health will get short of breath by scaling steps to a certain extent. When he arrived at the top step, as I said before, the complementary pressure that his heart would sustain was pretty well taken up but it was not all taken up, otherwise he would have dropped dead immediately upon arrival, and if and since he was able to walk across the room and in the presence of some shortness of breath proceed to change his clothing to go to work, he had this kind of condition before him; He had an increase in temperature to which his system and his peripheral circulation was adjusted when he got to the foot of the stairs at about zero weather. When he got to the room and got enough of the warmer air which was an increase of about 80 degrees, into his respiration, he immediately raised the temperature in his entire human anatomy and in so doing he dilated the capillaries which is the lingering area in the blood circulation, to the extent that he bled from the heart into the capillaries an excess amount of blood and stopped the heart at diastolization, or acute dilatation, which in my opinion is the cause of death."

Do these facts indicate that the decedent died as a result of an injury sustained in the course of and arising out of his employment?

If the decedent sustained an injury, it can not be seriously contended that it did not occur in the course of and arising out of his employment simply because he had not yet undertaken his specific duties of employment.

An injury is sustained in the course of and arising out of one's employment, when the employment has some causal connection with the injury, either through its activities, its conditions, of its environment. Thus an injury sustained by an employee in a zone of his employment under the control of his employer is compensable even though outside the enclosure constituting his place of work, if he is injured by the hazards of such zone growing out of the conditions and environments of his employment. (**Industrial Commission v Baker, 127 Oh St 345, 188 N. E. 560; Industrial Commission v Nelson, 127 Oh St 41, 186 N. E. 735, 14 Abs 478; Industrial Commission v Barber, 117 Oh St 373, 159 N. E. 363; Industrial Commission v Weigandt, 102 Oh St 1, 130 N. E. 38.**)

Does the fact that the decedent died of chronic myocarditis preclude the allowance of workmen's compensation?

Where death results from a constitutional disease such as heart disease, and where such death is no way connected

with the employment, a claim for a death award is properly disallowed. (Renkel v Industrial Commission, 109 Oh St 152, 141 N. E. 834; Industrial Commission v Russell, 111 Oh St 692, 146 N. E. 305; Industrial Commission v Davis, 119 Oh St 221, 162 N. E. 796.)

But where death is occasioned by a disease which is accelerated by an injury, the death is a causal result of the injury. (Industrial Commission v Polcen, 121 Oh St 377, 169 N. E. 305; Rosichan v Hoose, 40 Oh Ap 25, 177 N. E. 843, 10 Abs 463; Industrial Commission v Bauer, 28 Abs 641, 31 N. E. (2d) 265, 14 O. O. 104; Baker v Industrial Commission, 44 Oh App. 539, 14 Abs 315, 186 N. E. 10; Saupe v Industrial Commission, 69 Oh App. 519, 24 O. O. 248, 44 N. E. (2d) 282, 36 Abs. 507.)

The only issue therefore in this case is whether or not the decedent sustained an injury which accelerated his death of myocarditis.

In the case of Malone v The Industrial Commission, 140 Oh St 292, 23 O. O. 496, 43 N. E. (2d) 266, an injury is defined to be a physical or traumatic damage or harm, accidental in its character, in the sense of being the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place, while being subjected to a greater hazard than are members of the general public.

In so far as this case is concerned, in order for the plaintiff to recover it must be found that the decedent sustained:

1. A physical damage, or trauma;
2. By a sudden mishap occurring by chance;
3. At a particular time and place;
4. While subjected to a hazard of his employment greater that that of the general public.

Medical authority and the courts uphold the theory that when an employee subjects himself to sudden and extreme differences of temperature, the vital organs such as the lungs may sustain as much trauma as if hit by a hammer of by a blow on the chest. (Johnson v Industrial Commission, 63 Oh App. 544, 27 N. E. (2d) 418, 17 O. O. 271.)

A traumatic injury has been defined as one produced by any sudden violent attack upon the tissues or organs of a living body producing a wound, tear or an abnormal condition thereon or therein. The attack may result from contact with deleterious gases, destructive temperatures or forces of nature. (Malone v Industrial Commission, supra.)

In this case the diseased heart of the decedent was subjected to a sudden violent attack because of the change of pressure in his blood stream caused by leaving a zero tem-

perature and going into a temperature of 80 or 90 degrees after climbing three flights of stairs. This constitutes a traumatic injury. If the decedent had been at his place of employment for a sufficient time to have permitted his circulatory system to have adjusted itself to the exertion of climbing the stairs, and the sudden change in temperature then a different conclusion might be justified.

The subjection to a sudden change in temperature was a mishap although the decedent did so voluntarily. When the decedent walked into a superheated atmosphere and died as a proximate result thereof, his death was not the usual and expected result but the unusual and unexpected result of such employment, and was therefore accidental, or a sudden mishap occurring by chance and unexpectedly.

This incident also occurred at a particular time and place, while the decedent was being subjected to the activities, conditions and requirements of his employment under a greater hazard than are the members of the general public.

The medical evidence being to the effect that the climbing of the stairs and or the sudden change in temperature to which decedent subjected himself accelerated his heart condition thereby being the cause of his death, it will be ordered that the plaintiff is entitled to participate in the Workmen's Compensation Fund.