BECTON, DICKINSON & COMPANY, APPELLEE, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLANTS.

(No. 76-CA-7—Decided January 24, 1977.)

*Messrs. Pomerene, Burns & Milligan,* and *Mr. David Burns,* for appellee.

*Mr. Kenneth F. Berry* and *Mr. William M. Owens,* for appellant.

DOWD, J. This appeal seeks a declaration entitling an employee to participate in the workmen's compensation fund for injuries received in the public street separating the employer's premises (*i. e.* the plant) and the employees' parking lot provided by the employer for the employees' optional use.[1] We decline to so declare. Our analysis follows.

The employer-plaintiff-appellee, Becton, Dickinson & Company, in 1971, provided a parking lot for the optional use of its employees. Walnut Street, a public street in Coshocton, separated the employee parking lot and the en-

---

[1] It is conceded by the employee-appellant that no reported Ohio decision has allowed coverage under comparable facts.

trance to the employer's plant. On January 26, 1971, the defendant-appellant, Mildred Caley, an employee of Becton, Dickinson & Company, after parking in the employee parking lot, began crossing Walnut Street heading for an entrance to her employer's plant and was struck by an automobile and injured. The fact of her injury is not in dispute. The issue is whether her injury was consistant with the statutory definition of injury as declared in R. C. 4123.01(C) to be "* * * received in the course of, and arising out of, the injured employee's employment."

Mildred Caley's claim to participate was first allowed by the Administrator of the Bureau of Workmen's Compensation. The Canton Regional Board of Review reversed the Administrator's ruling. On appeal to the Industrial Commission, the claim was allowed. The plaintiff-appellee, Becton, Dickinson & Company, perfected an appeal to the Common Pleas Court of Coshocton County. The trial court, sitting without a jury, reversed the Industrial Commission thereby denying Mildred Caley the right to participate in the workmen's compensation fund.

Mildred Caley perfected an appeal to this court. Her sole assignment of error states:

"The court erred in granting judgment to appellee in that the judgment was against the manifest weight of the evidence and said court erred in the judgment that appellant was not entitled to participate in the State of Ohio Workmen's Compensation Act as said injury did not occur in or arise out of a course of employment and did not occur within the zone of employment as the public way in which the injury occurred was not under the control of the employer, the way traveled by appellant was not the sole and exclusive means of ingress and egress to her place of work and the public way was not constructed and maintained by the employer, and at the place and time of her injuries, appellant was not subjected to any special exposure to danger or harm different from that of the general public."

The argument advanced by Mildred Caley, the employee, centers on the fact that she enjoyed coverage un-

der the "zone of employment test" in the employer's park-- ing lot (*Marlow* v. *Goodyear Tire & Rubber Co.* (1967), 10 Ohio St. 2d 18) and once she passed through the en- trance of the employer's plant (*Kasari* v. *Indus. Comm.* (1932), 125 Ohio St. 410). Thus, as the argument goes, hav- ing once reached the "zone of employment" in the parking lot, logic compels the conclusion that she remained in the "zone of employment" while crossing Walnut Street.

In *Marlow, supra,* the employee who paid $3 per month for the privilege of parking in the employer's parking lot was injured in an automobile collision with a fellow employee on a parking lot owned, maintained and controlled by the employer for the exclusive use of of the employees. He was declared to have been injured in the "zone of employment" and thus in the course of employ- ment. His injury was declared to have been proximately caused by a natural hazard of the zone. It follows from *Marlow* that if an automobile collision in an employer's parking lot is a "natural hazard of the zone" a pedestrian auto injury is likewise a "natural hazard" of crossing Walnut Street. Thus the judicial inquiry must of necessity focus on whether Walnut Street was within Mildred Cal- ey's "zone of employment" on January 26, 1971, when she was injured.

The "zone of employment" test has been applied gen- erally to grant coverage where the employee is injured other than at his place of duty. See *Industrial Commission* v. *Barber* (1927), 117 Ohio St. 373; *Kasar* v. *Indus. Comm., supra; Gregory* v. *Indus. Comm.* (1935), 129 Ohio St. 365 and *Marlow, supra.*

*Barber, supra,* merits further consideration as it con- stitutes the basic exposition on the nature of the "zone of employment" concept. Additionally, the facts deal with coverage for an employee injured prior to reaching the employer's premises and while on a pubic street. Barber, an employee with the Thomas Sheet Steel Co., was injur- ed while approaching the entrance to his employer's plant which was located at the end of Summit Street, a dead end public street in the city of Niles. In order for Barber to

reach the employees' gate, it was necessary to traverse Summit Street. The court described the nature of Summit Street at page 379:

"While all of Summit Street is public property, and the public generally have a right to use it, and the public authorities the power to maintain it in any lawful manner, the record discloses that the street had been, and was, in fact, maintained, from Olive street to the plant of the Thomas Sheet Steel Company, by the Thomas Sheet Steel Company, and that it had maintained it as a common passageway for both pedestrians and vehicles and had not provided for its pedestrian employees a separate means of access to its plant." It concluded, at page 380, with respect to Summit Street as a public street:

"So that the whole situation between Olive street and the plant of the Thomas Sheet Steel Company constituted a condition and an environment of the employment *under the control of the employer,* and the hazards of that condition and environment were hazards to which the decedent was required to expose himself in the performance of his contract of employment." (Emphasis added.)

The Supreme Court then undertook to negate the apprehension that if the conditions and environment of the plant were construed to extend to the territory and conditions outside its enclosure, coverage would extend to all injuries occurring between the place of employment and the residence of the employer by responding, at 380:

"We do not think the apprehension as well grounded. We think the hazards occasioned by the conditions and environments of the employment * * * comprehend hazards arising out of the conditions and environments of the industrial plant *under the control of the employer,* whether such hazards are remediable or not, as distinguished from the hazards common to the public; that, where the conditions *under the control of an industrial plant* are such that the employe has no option but to pursue a given course with reference to such conditions and environments, the pursuance of such course is an implied obligation of the employe in his contract with such employer, and that

when he, for the purpose of entering upon his employment, has entered into the sphere or zone controlled by his employer, and is pursuing a course with reference to which he has no option, he is then not only within the conditions and environments of the plant of his employer, but is then in the course of his employment; * * *." (Emphasis added.)

In *Merz* v. *Indus. Comm.* (1938), 134 Ohio St. 36, 39, the Ohio Supreme Court unanimously denied recovery after reviewing the question of what constitutes a "zone of employment":

"What constitutes a zone of employment? It is the place of employment and the area thereabout, including the means of ingress thereto and egress therefrom, *under the control of the employer.*

"In the *Gregory case, supra,* an employee, who was on his employer's premises, but about two hundred yards from the place of active employment, was held to be within the zone of employment. To the same effect, see *Kasari* v. *Industrial Commission,* 125 Ohio St., 410, 181 N. E. 809, 82 A. L. R. 1040.

"In *Industrial Commission* v. *Barber,* 117 Ohio St., 373, 159 N. E., 363, a workman, while on his way to work, was injured outside, but at the ingress to, the premises of his employer. The court held that when an employee, for the purpose of reaching his place of employment, reaches a zone just outside the enclosure of his employer, which furnishes the only unobstructed access thereto, he will be deemed to have reached the zone of his employment. The court held untenable the argument of counsel that such rule would extend the zone of employment to all points between the place of employment and the place of abode of the employee.

"In *Kasari* v. *Industrial Commission, supra,* the court, commenting on this phase of the *Barber case,* stated that the above rule was based on the principle that the *zone of employment was under the control of the employer.*

"In the instant case, decedent was killed outside of

the zone of his employment, a distance of about one and a half miles from the mine property of the company and on the premises *not under its control.*

"Though the 'open shop' policy at the mine subjected him to a condition and environment of continuous hazards of employment (*Gregory* v. *Industrial Commission, supra*), due to the strike, his duties were limited to the zone of his employment and did not extend to territory *not under his employer's control.* Decedent's employment as captain of the guard at the mine was a circumstance which had no causal relation to his death.

"There being no direct causal connection between decedent's employment and his death, he cannot be held to have died from accidental injuries sustained while in the course of his employment. His death, consequently, is not compensable." (Emphasis added.)

*Barber, supra,* and *Merz, supra,* clearly stand as authority for the proposition that it is indispensable to a zone of employment determination that the place of injury be *under the control of the employer.* In the instant case, the record demonstrates, unlike *Barber, supra,* that the public street, *i. e.,* Walnut Street in the city of Coshocton, was under the control of the city of Coshocton and in no way under the control of the employer. To extend coverage to Mildred Caley would, in our opinion, require that we declare an exception[2] to the well established requirement in Ohio that the "zone of employment" extends only to those places *under the control of the employer.*

The carving out of an exception to the *"under the control of the employer"* requirement for the *"zone of employment"* test so as to extend coverage to the employee while crossing a public street separating the employer's parking lot, available for the employees' optional use, and the employer's plant should, in our opinion, be limited to

---

[2]Such an exception has been developed by the Eighth District Court of Appeals in *Frishkorn* v. *Flowers* (1971), 26 Ohio App. 2d 165, with respect to employee use of a shopping center parking lot even though the shopping center parking lot was neither owned nor controlled by the employer-lessee of a retail outlet in the shopping center.

legislative action[3] or appropriate declarations[4] by the Ohio Supreme Court.

For the foregoing reasons, the sole assignment of error is overruled and the judgment of the Court of Common Pleas of Coshocton County is affirmed.

*Judgment affirmed.*

RUTHERFORD, P. J., concurs.
PUTMAN, J., dissents.

PUTMAN, J., dissenting. Having been directed by the Ohio legislature by R. C. 4123.95, effective November 2, 1959, to construe these statutes liberally in favor of employees and the dependents of deceased employees, I conclude that the injuries in this case were received in the course of and arising out of the employment.

----

[3]The most favorable decisions cited in favor of the employee's position in comparable fact situations are found in *Jean* v. *Chrysler Corp.* (1966), 2 Mich. App. 564, 140 N. W. 2d 756 and *Adair* v. *Metropolitan Bldg. Co.* (1972), 38 Mich. App. 393, 196 N. W. 2d 335, both based on a liberal interpretation of an amendment to the Workmen's Compensation statutes of Michigan stating:

"Every employee going to or from work while on the premises where his work is to be performed, and within a reasonable time before and after his working hours, shall be presumed to be in the course of his employment." Mich. Stat. Anno. 17.151.

[4]For support for the employee's position, see *Swanson* v. *General Paint Co.* (Okla. 1961), 361 P. 2d 842. For support for the employer's position, see *Halama* v. *Dept. of Industry* (1970), 48 Wisc. 2d 328, 179 N. W. 2d 784; *Dinsmores Case* (1948), 143 Me. 344, 62 A. 2d 205; *Stoskin* v. *Board of Education* (1971), 11 Md. App. 355, 274 A. 2d 397; *North American Rockwell Corp.* v. *Workmen's Comp. Appeal Board* (Pa. 1975), 346 A. 2d 379; *Osborn* v. *Indus. Comm.* (1972), 50 Ill. 2d 150, 277 N. E. 2d 833.