NOBLES ET AL., APPELLANTS, *v.* WOLF, APPELLEE;
HAMILTON MUTUAL INSURANCE COMPANY, APPELLANT AND APPELLEE.

[Cite as Nobles *v.* Wolf (1990), 54 Ohio St. 3d 75.]

(No. 89-888—Submitted May 8, 1990—Decided October 10, 1990.)

*Bennett & Knight* and *Christopher Knight,* for appellants.

*Kevin J. Zeiher,* for appellee Richard Wolf.

*Meister, Ayers & Meister Co., L.P.A.,* and *Marc J. Meister,* for appellant and appellee Hamilton Mutual Insurance Co.

*Fritz Byers,* urging affirmance for *amicus curiae,* State Farm Mutual Auto. Insurance Co.

This cause is affirmed on authority of *State Farm Mut. Auto. Ins. Co.* v. *Webb* (1990), 54 Ohio St. 3d 61, 562 N.E. 2d 132.

MOYER, C.J., HOLMES, WRIGHT and H. BROWN, JJ., concur.

RESNICK, J., concurs separately.

SWEENEY and DOUGLAS, JJ., dissent.

ALICE ROBIE RESNICK, J., concurring. I concur since this case is factually distinguishable from *State Farm Mut. Auto. Ins. Co.* v. *Webb* (1990), 54 Ohio St. 3d 61, 562 N.E. 2d 132, decided this day. The distinguishing factor in this case is the nonapplicability of R.C. 3937.18(D).

R.C. 3937.18(D) provides as follows:

"For the purpose of this section, a motor vehicle is uninsured if the liability insurer denies coverage or is or becomes the subject of insolvency proceedings in any jurisdiction."

In the present case, both parties stipulated that the tortfeasor's insurance company *has not denied coverage.* However, in *Webb, supra,* the record clearly demonstrated that the tortfeasor's insurance company had denied coverage. Since the tortfeasor's insurance company did not deny coverage in the instant case, R.C. 3937.18(D) is not applicable. Therefore, the tortfeasor is not an uninsured motorist under R.C. 3937.18(D).

SWEENEY, J., dissenting. Inasmuch as the disposition of the present case has been accomplished through journal entry, a recitation of the relevant facts and applicable law is in order.

On April 28, 1986, defendant-appellee Richard M. Wolf was driving his 1983 Oldsmobile Cutlass automobile on Woodland Avenue in Clyde, Ohio, and proceeding to his place of employment. Upon arrival, he made a left turn on Woodland Avenue and into the parking lot of his employer, Whirlpool Corporation. Wolf continued across the lot whereupon his vehicle collided with a 1983 Mazda GLC automobile owned and operated by a co-employee, plaintiff-appellant Wanda G. Nobles. At the time of the collision, Wolf was insured under a policy of insurance issued by Grange Mutual Casualty

Company and which provided bodily injury liability coverage in the amount of $100,000 per person per occurrence. Nobles also was insured under a policy of insurance with defendant-appellant and appellee Hamilton Mutual Insurance Company which provided uninsured motorist coverage in an identical amount.

On January 13, 1987, appellants, Wanda and Michael L. Nobles, instituted the present action in the Sandusky County Common Pleas Court alleging that the collision in the Whirlpool parking lot was the result of Wolf's negligent operation of his motor vehicle and that, as a result thereof, appellant Wanda Nobles suffered personal injuries, medical expenses and lost wages, and appellant Michael Nobles suffered the loss of his wife's services. Thereafter, appellee Hamilton Mutual was joined as a party defendant.

On December 11, 1987, Wolf filed a motion for summary judgment, claiming that he was immune from suit pursuant to R.C. 4123.741. The motion was denied on February 10, 1988. On February 25, 1988, Wolf filed a motion for reconsideration of the motion for summary judgment. In support thereof, a deposition was filed relative to the status of Wolf and Nobles as co-employees of Whirlpool and Whirlpool's ownership and control of the parking lot where the collision occurred. On April 15, 1988, Hamilton Mutual filed a counterclaim for declaratory judgment against appellants, alleging that Wolf asserted he was immune from suit and that his automobile did not constitute an "uninsured vehicle" for purposes of the insurance agreement between Hamilton Mutual and the Nobleses.

On May 5, 1988, the trial court granted Wolf's motion for reconsideration and rendered summary judgment in his favor, holding that he was immune from suit by appellants as a co-employee pursuant to R.C. 4123.741.

On May 13, 1988, Hamilton Mutual filed a motion for summary judgment on its counterclaim. On May 25, 1988, appellants responded by filing a motion for summary judgment. Both motions were predicated upon joint stipulations of fact filed May 13, 1988. One of the stipulations accompanying the motions provided in relevant part:

"Grange Mutual Casualty Insurance Company has at no time denied liability coverage for Richard M. Wolf as a result of the April 28, 1986 collision. * * *"

On May 27, 1988, the trial court granted the motion filed by appellants, finding that the immunity from suit enjoyed by Wolf rendered him an uninsured motorist for purposes of the Nobleses' policy of insurance with Hamilton Mutual.

On March 14, 1989, appellant Wanda Nobles was awarded temporary total disability compensation by the Industrial Commission of Ohio for the injuries she sustained as a result of the April 28, 1986 collision. On April 10, 1989, the court of appeals affirmed the May 5, 1988 decision of the trial court concluding that Wolf was immune from suit, but reversed the May 27, 1988 decision of the trial court that Wolf was an uninsured motorist for purposes of the policy of insurance between the Nobleses and Hamilton Mutual.

Hamilton Mutual in its capacity as appellant herein contends that Wolf may not avail himself of the immunity afforded co-employees pursuant to R.C. 4123.741. This section provides:

"No employee of any employer, as defined in division (B) of section 4123.01 of the Revised Code, shall be liable to respond in damages at common law or by statute *for any injury or*

*occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment,* or for any death resulting from such injury or occupational disease, *on the condition that such injury, occupational disease, or death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."* (Emphasis added.)

Hamilton Mutual maintains that Wolf does not qualify for the immunity granted by R.C. 4123.741 because: (1) Wolf was not acting within the course and scope of his employment at the time of the collision, (2) there was no "special hazard" in the parking lot such as to bring the events in question within the purview of a compensable injury under the workers' compensation law, and (3) public policy does not countenance immunity for a driver of a privately owned vehicle required to be insured under Ohio's Financial Responsibility Act.

In its reliance upon *State Farm Mut. Auto. Ins. Co.* v. *Webb* (1990), 54 Ohio St. 3d 61, 562 N.E. 2d 132, the majority has implicitly rejected the aforementioned contentions of Hamilton Mutual. In so doing, the majority has acknowledged that appellee Wolf has satisfied the requisites of R.C. 4123.741 and thus enjoys the immunity conferred thereby. In order for such immunity to attach, R.C. 4123.741 requires that the injured employee receive her injuries "in the course of and arising out of * * * [that] employee's employment." Appellant Wanda Nobles suffered her injuries while traversing her employer's parking lot after completing her work day. It is heartening to know that at long last members of the majority who were in dissent in *Griffin* v. *Hydra-Matic Division, General Motors Corp.* (1988), 39 Ohio St. 3d 79, 529 N.E. 2d 436,

recognize that under such circumstances the employee has suffered a compensable injury. One only hopes that their eleventh-hour conversion is not merely a pretext for the denial of insurance benefits to an injured employee. It is further hoped that a similar analysis will be applied when an employee injured under identical circumstances seeks workers' compensation benefits.

Whatever the motivations for this change of heart, I am in agreement that the circumstances of Wanda Nobles' injury and her successful application for workers' compensation benefits confer upon her fellow employee (Wolf) the immunity provided by R.C. 4123.741.

However, Hamilton Mutual, in its capacity as appellee, contends that the immunity afforded Wolf does not render him an uninsured motorist for purposes of the policy of insurance issued by it to appellants, Wanda and Michael Nobles. The policy provides in relevant part:

"We will pay damages *which a covered person is legally entitled to recover from the owner or operator of an uninsured/underinsured motor vehicle because of bodily injury sustained by a covered person caused by an accident.*

"The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the *uninsured/underinsured motor vehicle.*

"Any judgment for damages arising out of a suit brought without our written consent is not binding on us. If we and you do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue shall be on us.

" *'Covered person'* as used in this Part means:

"1. You and any family member;

"2. Any other person occupying your covered auto;

"3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

" *'Uninsured motor vehicle' means a land motor vehicle or trailer of any type*:

"1. To which no liability bond or policy applies at the time of the accident.

"2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged.

"3. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:

"a. you or any family member;

"b. a vehicle which you or any family member are [*sic*] occupying; or

"c. your covered auto.

"4. *To which a liability bond or policy applies at the time of the accident but the bonding or insuring company*:

"a. *denies coverage*; or

"b. is or becomes insolvent.

"* * *."" (Emphasis added.)

The court of appeals below concluded that the language of the Hamilton Mutual policy and R.C. 3937.18 does not obligate an uninsured motorist carrier to compensate an insured where a negligent tortfeasor is immune from suit pursuant to R.C. 4123.741. R.C. 3937.18(A)(1) provides as follows:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder *who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom*[.]" (Emphasis added.)

The court of appeals determined that the language in the policy and the statute limited compensation to those policyholders who were "legally entitled to recover from the owner or operator of an uninsured motor vehicle." Inasmuch as the appellate court found that Wolf was immune from suit, it concluded that the Nobleses were not legally entitled to recover therefrom. Accordingly, the court of appeals determined that Wolf's immunity from suit defeated any contractual obligation of Hamilton Mutual to the Nobleses.

In arriving at this conclusion, the appellate court, as well as the majority herein, relies upon *York* v. *State Farm Fire & Cas. Ins. Co.* (1980), 64 Ohio St. 2d 199, 18 O.O. 3d 412, 414 N.E. 2d 423. In *York*, this court held that persons injured as a result of a collision with an entity enjoying governmental immunity pursuant to R.C. 701.02 (*i.e.*, a fire truck) could not pursue an uninsured motorist claim against their own

insurer because such persons, pursuant to then effective R.C. 3937.18(A), were not "legally entitled to recover damages from [the] owners or operators" of the vehicle in question.

In the course of interpreting R.C. 3937.18(A) the court in *York* observed as follows:

"The statute itself clearly indicates that the impetus and dominant feature for imposing the uninsured motorist provision is 'for the protection of persons insured thereunder who *are legally entitled to recover damages from* owners or operators of uninsured motor vehicles.'

"It is obvious from a reading of the statute that the insured must be an entity capable of collecting *from* an uninsured. The city, in the instant cause, is cloaked with immunity, and, therefore, the appellees are *not legally* entitled to recover damages *from* the city." (Emphasis *sic*.) *Id.* at 202, 18 O.O. 3d at 414, 414 N.E. 2d at 425.

The foregoing interpretation of R.C. 3937.18(A) is at variance with the meaning ascribed to the phrase "legally entitled to recover" in *Sumwalt v. Allstate Ins. Co.* (1984), 12 Ohio St. 3d 294, 12 OBR 368, 466 N.E. 2d 544. The syllabus thereto provides:

"*The phrase 'legally entitled to recover[] from the owner or operator of an uninsured auto,'* contained in the uninsured motorist provision of an automobile liability insurance policy, *means that the insured must be able to prove the elements of her claim necessary to recover damages.* That the uninsured motorist tortfeasor has a child-parent immunity as a defense in an action brought against him by his parent does not affect the insured's elements of the claim for damages nor the insured's right to recover unin-

sured benefits from her insurer." (Emphasis added.)

The interpretation of the phrase in *Sumwalt* more closely comports with the interests sought to be advanced by R.C. 3937.18. Clearly the legislative purpose in employing the phrase is reflective of commonly held fault principles utilized in both tort and insurance contract law. To the extent that the insured is not at fault (*i.e.*, she is legally entitled to recover), R.C. 3937.18 provides that her insurer is obligated to provide coverage for damages sustained as a result of the acts of a tortfeasor who, for whatever reason, is unable or unwilling to compensate her for her loss.

In contrast, the court in *York* commented at 202, 18 O.O. 3d at 413-414, 414 N.E. 2d at 425, as follows:

"The intent and thrust of R.C. 3937.18 is not to provide coverage in all situations that might otherwise go uncompensated; rather, the uninsured motorist provision applies only when there is a *lack of liability insurance*. The insurance policy, and more importantly the statute, are not implemented when there is a *lack of liability* due to immunity.

"* * *

"It is the legal defense, and not the status of insurance, that warrants our decision herein. The uninsured motorist coverage is to apply only in those situations in which the *'lack of liability insurance'* is the reason the claim goes uncompensated, and not when the claim goes uncompensated because of the *lack of liability* due to the substantive laws of Ohio." (Emphasis *sic*.)

This analysis of R.C. 3937.18 is flawed in numerous respects. As an initial matter, the notion that uninsured motorist coverage applies only in situations where the tortfeasor is uninsured is belied by the language of R.C.

3937.18(D),[1] the language of the insurance policy at issue herein and the facts of the present case. Both R.C. 3937.18(D) and the policy essentially define an "uninsured motor vehicle" as one to which a liability bond or policy applies at the time of the accident but the bonding or uninsuring company denies coverage. In the case at bar, Wolf was insured under a liability policy of insurance.[2] The clear purpose of the language employed is to assure that any compensation for an injured party is not unduly delayed while the respective insurance companies determine which insured was at fault.[3] In any event it is clear that R.C. 3937.18 can and does apply in situations where the tortfeasor is, in fact, insured.

Secondly, it is important to recognize that the immunity conferred by R.C. 4123.741 is an exception to the general principle that persons and entities are liable for harm caused by their tortious acts. See *Ramos* v. *Madera* (1971), 4 Cal. 3d 685, 692, 94 Cal. Rptr. 421, 426, 484 P. 2d 93, 98; *Muskopf* v. *Corning Hospital Dist.* (1961), 55 Cal. 2d 211, 219, 11 Cal. Rptr. 89, 94, 359 P. 2d 457, 462. As an exception to a rule of general applicability, such immunity is to be narrowly construed by the courts and should be applied only to the class of persons or things which is the object of legislative attention. See *Assn. for Defense of the Washington Local School Dist.* v. *Kiger* (1989), 42 Ohio St. 3d 116, 118, 537 N.E. 2d 1292, 1293; *State, ex rel. Natl. Broadcasting Co.*, v.

*Cleveland* (1988), 38 Ohio St. 3d 79, 84, 526 N.E. 2d 786, 790; *Faith Fellowship Ministries, Inc.* v. *Limbach* (1987), 32 Ohio St. 3d 432, 434, 513 N.E. 2d 1340, 1342.

R.C. 4123.741 is specifically tailored to confer immunity upon those persons whose acts injure their fellow employees when such injuries are sustained in the course of employment and arise therefrom. It is an inappropriate expansion of R.C. 4123.741 to glean from its terms a legislative intent to confer derivative immunity upon insurers. Inasmuch as the immunity conferred by R.C. 4123.741 on a limited class of persons is an exception to the well recognized concept that persons are liable for harm arising from their tortious acts, the statute must be narrowly applied only to those individuals identified by the Ohio General Assembly. In this respect, our decision in *Miller* v. *Fairley* (1943), 141 Ohio St. 327, 25 O.O. 459, 48 N.E. 2d 217, is particularly instructive. *Miller* involved the interpretation of Ohio's guest statute. (G.C. 6308-6.) The statute provided as follows:

"The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wilful or wanton misconduct of such operator, owner or persons

---

[1] R.C. 3937.18(D) provides as follows: "For the purpose of this section, a motor vehicle is uninsured if the liability insurer denies coverage or is or becomes the subject of insolvency proceedings in any jurisdiction."

[2] I do not understand Hamilton Mutual

to contend that, but for the immunity conferred by R.C. 4123.741, it would not be contractually obligated to its insured under similar circumstances.

[3] Obviously, as between the two insurers, the loss would fall on the insurer whose insured was tortiously liable.

responsible for the operation of said motor vehicle."

Concluding that G.C. 6308-6 was inapplicable to an action instituted by passengers of a motor vehicle who had contributed to its operating expenses, this court remarked at 335, 25 O.O. at 462, 48 N.E. 2d at 221:

"The statute must be construed to effectuate its purpose, but, being in derogation of the common law and the rights of those who may be injured by the negligent operation of an automobile while being transported therein, its general provisions must be strictly construed * * *."

See, also, *Wall* v. *Cincinnati* (1948), 150 Ohio St. 411, 416, 38 O.O. 289, 291, 83 N.E. 2d 389, 392 (statute imposing municipal liability is exception to common-law sovereign immunity and thus must be narrowly construed); *Weis* v. *Weis* (1947), 147 Ohio St. 416, 428-429, 34 O.O. 350, 355, 72 N.E. 2d 245, 252 (statutorily created privilege, as an exception to common-law rule favoring admissibility of relevant evidence, must be strictly construed).

Similarly, the immunity conferred by R.C. 4123.741, being in derogation of the common-law rule that persons are answerable for damages proximately caused by their tortious acts, must be narrowly applied only to those persons satisfying the criteria set forth therein. Uninsured motorist insurers were simply not the objects of legislative concern when R.C. 4123.741 was enacted and the statute should not be judicially expanded to encompass them. In this respect, the broad intent of R.C. 3937.18 augments the statutory purposes sought to be advanced through enactment of R.C. Chapter 4509 (the Financial Responsibility Act). In contrast to Hamilton

Mutual's prior argument that R.C. 4123.741 and Chapter 4509 operate at cross-purposes, it is evident that the Financial Responsibility Act and R.C. 3937.18 complement each other in assuring that persons tortiously injured by the acts of others will have available to them a source of compensation for the loss that they have incurred. Accordingly, this interpretation of R.C. 3937.18(A) is not only consistent with the purposes behind its enactment but also serves the legislative concerns to which R.C. Chapter 4509 was directed.

Hamilton Mutual maintains, however, that to permit recovery from it while at the same time affording Wolf immunity would destroy its subrogation rights. Apparently, the majority agrees with this contention. The argument, however, cannot withstand scrutiny. As an initial matter, Hamilton Mutual, pursuant to its insurance policy and R.C. 3937.18, is not obligated to compensate appellants pursuant to the uninsured motorist provision unless and until Wolf's liability carrier denies coverage. This has not occurred. While the denial of liability coverage is the triggering event for activation of uninsured motorist coverage, this denial may be predicated on any number of bases both valid and invalid. Neither the insurance policy nor R.C. 3937.18 conditions recovery of uninsured motorist benefits on the grounds asserted by Wolf's liability carrier in denying coverage. From the standpoint of the insured it is sufficient that such liability coverage has been denied. Whether the liability insurer has relied on a legally sound basis for denying coverage is a matter more appropriately resolved in an action between the respective insurance companies.[4] In

---

[4] The most common point of contention would concern which insured was legally at fault. In the case at bar, even if it was later determined that Wanda Nobles was the

any event, at this stage of the proceeding it is pure speculation whether the subrogation rights of Hamilton Mutual, if any, have been extinguished. Assuming *arguendo* that such rights have been adversely impacted, such result is merely incidental to the operation of R.C. 3937.18(A) and the language of the insurance policy. This court has previously upheld the constitutionality of R.C. 2744.05(B), which expressly denies to an insurer the right to pursue a subrogation action against a political subdivision of the state. See *Menefee* v. *Queen City Metro* (1990), 49 Ohio St. 3d 27, 550 N.E. 2d 181 (H. Brown, J.). It can scarcely be argued that such a result is impermissible where it is the natural consequence of the application of R.C. 3937.18(A) to the facts of this case.

Finally, the subrogation argument is predicated upon a legal fiction which bears virtually no relation to the realities involved in obtaining compensation from an uninsured tortfeasor. It is certainly not uncommon that tortfeasors who are unable or unwilling to obtain liability insurance are likewise unable to compensate the parties they injure. Indeed, one of the motivating factors behind the decision of an insured to contract for uninsured motorist coverage is protection from the doubly irresponsible behavior of motorists who drive negligently and who flout the requirements of the

Financial Responsibility Act. When uninsured motorist benefits are paid under such circumstances, the ability of the uninsured motorist carrier to recover from the tortfeasor is virtually nonexistent. To urge that such subrogation rights are destroyed where the tortfeasor is immune from liability while insisting that they remain viable where a tortfeasor is judgment proof due to financial insolvency is simply disingenuous.[5] Clearly the latter situation represents the more common occurrence. This reality also serves to undermine the mechanistic interpretation of the phrase "legally entitled to recover" employed in *York* and relied upon by the majority. It would be curious indeed if uninsured motorist coverage was, in all cases, conditioned upon ultimate recovery of compensation from the tortfeasor. Would the majority advance the further argument that uninsured motorist coverage is unavailable to an insured where the insurer is unable to recover from the tortfeasor amounts owed to the insured? Applying the rationale of *York*, coverage could be denied where a judgment debt obtained against the tortfeasor is discharged in bankruptcy. Under such circumstances, the insured would not be "legally entitled to recover" from the uninsured motorist if the interpretation of this phrase adopted in *York* is utilized.

It is evident that the meaning

---

negligent party, compensation for her bodily injuries would nevertheless be available from Hamilton Mutual pursuant to the Medical Payments Coverage provision of her insurance policy. Indeed, Hamilton Mutual's interpretation of its uninsured motorist coverage would produce an anomaly whereby payment for medical expenses thereunder would be denied in the event an immune fellow employee was the negligent party, but compensation therefor under the medical payments provision of

the same policy would be available under circumstances where the insured was at fault.

[5] It is evident, therefore, that the emphasis on subrogation rights by Hamilton Mutual amounts to nothing more than a philosophical construct designed to enable it to escape its contractual obligations. Regrettably the majority is a party to this subterfuge.

ascribed to this language in *Sumwalt, supra,* is better adapted to the risks encountered by the public in contemporary society and more closely reflects the interests sought to be advanced by the General Assembly when R.C. 3937.18 was adopted. The enactment of R.C. 3937.18(A)(1) has as its purpose the provision of insurance coverage to an injured party who, for whatever reason, is unable to obtain compensation from one whose tortious operation of his motor vehicle is the proximate cause of the injuries.

Inasmuch as the holding in *York, supra,* is inconsistent with our subsequent decision in *Sumwalt, supra,* and the public policy which underlies R.C. 3937.18, it should be overruled. Once disposition of the present controversy is predicated on this basis, any discussion of the distinctions between statutory and common-law immunity in *Sumwalt, supra,* or absolute and conditional immunity in *Thiel* v. *Allstate Ins. Co.* (1986), 23 Ohio St. 3d 108, 23 OBR 267, 491 N.E. 2d 1121, is unnecessary. Immunity of whatever sort is wholly irrelevant to the determination of uninsured motorist coverage under R.C. 3937.18.

However, *York* is distinguishable from the present case in one respect. In *York,* the tortfeasor was insured by the Hartford Insurance Group which, based on its insured's immunity from suit, "denied legal liability for * * * [the Yorks'] claims." *Id.* at 199, 18 O.O. 3d at 412, 414 N.E. 2d at 423. Unlike the liability carrier in *York,* Grange Mutual (Wolf's insurer) has not denied coverage. In both cases, the triggering event for uninsured motorist coverage under the policies and R.C. 3937.18(A)(1) and (D) is not the immunity of the tortfeasor but the denial of coverage by his liability insurer. In the case at bar, this event has not occurred. Thus, while the appellate court erred in its reliance upon *York,* the trial court was likewise mistaken in concluding that Wolf's immunity was dispositive of the case and entitled appellants to summary judgment. Summary judgment would be justified only where (1) Wolf was uninsured or (2) Wolf was insured *and his liability insurer denied coverage.*[6]

However, merely because appellants' motion for summary judgment should be denied does not mean that judgment should be entered for appellees. The present controversy arises from the disposition of *appellants'* motion for summary judgment and appellees' motions for summary judgment *with respect to the immunity of Wolf.* The instant appeal does not arise in the context of a motion for summary judgment filed by *appellees* disputing Wolf's uninsured status. Accordingly, while I agree with much of the discussion by Justice Resnick in her dissent in *Webb, supra,* given the procedural context in which the instant case arises I do not share her view as to the ultimate disposition of this controversy. Appellees are not entitled to entry of judgment merely because appellants have failed to establish Wolf's uninsured status (*i.e.,* the liability carrier as yet has not denied coverage). This omission simply defeats entry of summary judgment for appellants. On remand, this omission could be remedied at trial or through an

---

[6] This aspect of the insurance policy and R.C. 3937.18(D) should not be interpreted as a means by which the liability insurer may frustrate appellants' recovery from the uninsured motorist carrier by failing to expressly reject coverage. Demands for coverage made by appellants and left unanswered could be worded in such a manner that the failure of the insurer to respond may be considered by the trial court to be tantamount to a rejection of coverage.

amended motion for summary judgment. I would therefore remand the cause to the trial court for a determination of whether the automobile driven by Wolf was an "uninsured motor vehicle" within the meaning of R.C. 3937.18 and the uninsured motorist provision of the Nobleses' policy of insurance.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

DOUGLAS, J., dissenting. I dissent for the reasons stated in my dissenting opinion in *State Farm Mut. Auto. Ins. Co. v. Webb* (1990), 54 Ohio St. 3d 61, 562 N.E. 2d 132.

Additionally, by affirming the case at bar on the authority of *Webb*, today's majority *sub silentio* decides an issue which has never been previously decided by this court, to wit: that under all circumstances, an employee *on the way to* work enters into the services of his or her employer upon entering the employer's parking lot. Such a proposition represents an enormous expansion of an employer's responsibility, *inter alia*, under the Workers' Compensation Act. In my judgment, the majority's holding is certainly worthy of discussion and should rightfully appear in a syllabus paragraph to a written opinion of this court.

In *Webb*, Randy L. Webb and William Creekmore were fellow employees. Webb was a gate guard performing his employment duties when he was struck by an automobile driven by Creekmore in the vicinity of the gate. There is no indication whether Creekmore was *leaving or entering* his employer's premises. The parties stipulated that both Webb and Creekmore were acting within the course of their employment at the time of the accident. Based upon these facts, the majority in *Webb* concluded

that pursuant to R.C. 4123.741, Creekmore enjoyed immunity from suit for the injuries sustained by Webb. R.C. 4123.741 provides that:

"No *employee* of any employer, as defined in division (B) of section 4123.01 of the Revised Code, shall be liable to respond in damages at common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment, or for any death resulting from such injury or occupational disease, on the condition that such injury, occupational disease, or death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code." (Emphasis added.)

An "employee" is defined in R.C. 4123.01(A)(1)(b) as follows:

"Every person *in the service of* any person, firm, or private corporation, including any public service corporation, that (i) employs one or more workmen or operatives regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens and minors, household workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single household and casual workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single employer, or (ii) is bound by any such contract of hire or by any other written contract, to pay into the state insurance fund the premiums provided by Chapter 4123. of the Revised Code." (Emphasis added.)

Simply stated, the majority in *Webb* determined that Creekmore enjoyed the immunity granted by R.C. 4123.741 because at the time of the accident Creekmore was in the service of his employer and Webb's injuries were

sustained in the course of and arising out of Webb's employment.

In the case *sub judice,* Richard M. Wolf and Wanda G. Nobles were employed by Whirlpool Corporation. An automobile driven by Wolf collided with an automobile driven by Nobles in the Whirlpool Corporation parking lot. At the time of the accident, Nobles was *leaving* the parking lot and Wolf was on his *way to* work.

By affirming the case at bar on the authority of *Webb,* the majority, *sub silentio,* holds that pursuant to R.C. 4123.741, Wolf (the tortfeasor), is entitled to immunity because: (1) at the time of the accident, Wolf was in the services of his employer; and (2) Nobles was injured in the course of and arising out of her employment. In doing so, the majority has determined that an employee on his or her *way to* work (*i.e.,* Wolf) enters into the services of his or her employer upon entering the employer's parking lot. Therefore, any injury sustained by such an employee while on the employer's parking lot occurs "* * * in the course of * * *" his or her employment within the meaning of R.C. 4123.54.[7] Likewise, the majority also determines that an employee who is injured on the employer's parking lot while leaving work (*i.e.,* Nobles) receives such an injury in the course of his or her employment.

Accordingly, today's majority determines, without specifically so articulating, that when an employee is injured in his or her employer's parking lot, the injury is sustained in the course of the employee's employment regardless of whether the employee is going to, or coming from, work. In my view, the distinction between going to, and coming from, work is significant. The employee going to work has normally been displaced from his employment duties for a significant period of time and, thus, it is more difficult to pinpoint the time at which the employee enters into the course of his or her employment.

As discussed below, no case previously decided by this court sets forth, in unambiguous terms, a universal rule that an employee who is injured in his or her employer's parking lot while on his or her *way to* work receives such an injury in the course of his or her employment as a matter of law. Today, a majority of this court sets forth such a rule and, thereby, increases an employer's responsibility under the Workers' Compensation Act.

In *DeCamp* v. *Youngstown Mun. Ry. Co.* (1924), 110 Ohio St. 376, 144 N.E. 128, paragraphs one and two of the syllabus, this court held that:

"1. Where an employer contracts to carry an employe to and from his

---

[7] R.C. 4123.54 states, in relevant part, that:

"Every employee, who is injured or who contracts an occupational disease, and the dependents of each employee who is killed, or dies as the result of an occupational disease contracted in the course of employment, wherever such injury has occurred or occupational disease has been contracted, provided the same were not:

"(A) Purposely self-inflicted; or

"(B) Caused by the employee being intoxicated or under the influence of a controlled substance not prescribed by a physician where the intoxication or being under the influence of the controlled substance not prescribed by a physician was the proximate cause of the injury, is entitled to receive, either directly from his employer as provided in section 4123.35 of the Revised Code, or from the state insurance fund, the compensation for loss sustained on account of the injury, occupational disease or death, and the medical, nurse, and hospital services and medicines, and the amount of funeral expenses in case of death, as are provided by this chapter."

work, the employment begins when the employe enters the conveyance to go to the place of work.

"2. An employe of a street railway who was injured at the car stop where he left the street car in order to go to his employment, having been conveyed to his work on the street car as a part of the contract of employment, is injured in the course of his employment, and is remitted to the Workmen's Compensation Act for compensation."

The employee in *DeCamp* was injured while on his way to work and while on his employer's premises. However, by its very terms, *DeCamp* applies only to injuries sustained by an employee on the way to work when transportation to work is part of the employee's contract of employment.

In *Indus. Comm.* v. *Barber* (1927), 117 Ohio St. 373, 159 N.E. 363, paragraph one of the syllabus, this court held that:

"An employe, who for the purpose of reaching his place of employment travels a course which affords the only unobstructed access thereto, enters upon the course of his employment within the contemplation of the Workmen's Compensation Law when he reaches the zone of such employment that is under the control of his employer, even though such zone be outside the inclosure of his employer."

*Barber*, of course, does not hold that every employee injured on his or her way to work in an area controlled by the employer is within the scope of the employee's employment. Rather, the holding in *Barber* applies to situations outside the employer's premises and only then in particular circumstances.

In *Indus. Comm.* v. *Henry* (1932), 124 Ohio St. 616, 180 N.E. 194, paragraph one of the syllabus, this court held that:

"Where the claimant's decedent had entered upon his employment in the early morning hours, had left the premises of the employer to get his breakfast at a restaurant, in accordance with a custom acquiesced in by the employer, and, while returning to the premises of the employer by a direct and necessary route along a public thoroughfare, was struck by a train running upon the tracks of a railroad so immediately adjacent to the premises of the employer that the only way of ingress and egress toward the restaurant was one of hazard, the accident arose out of and in the course of the decedent's employment."

In *Henry*, the employee was returning to work (having previously entered into the services of his employer) but sustained injuries outside his employer's premises and in an area not controlled by his employer. Clearly, the facts in *Henry* can be distinguished from the facts in the case at bar. Further, the holding in *Henry* is specifically tailored to the facts of that case.

In *Kasari* v. *Indus. Comm.* (1932), 125 Ohio St. 410, 181 N.E. 809, paragraphs one and two of the syllabus, this court held that:

"1. An employe, entering the premises of his employer to begin the discharge of the duties of his employment but who has not yet reached the place where his service is to be rendered, is discharging a duty to his employer which is a necessary incident to his day's work.

"2. Traversing the zone between the entrance of the employer's premises and the plant where an employe is employed, is one of the hazards of the employment."

Thus, *Kasari* apparently stands for the proposition that any employee suffering an injury on his or her way to work while on the employer's premises

suffers such an injury in the course of employment. However, in *Kasari*, certain relevant language in the body of the opinion retreats from the language contained in the syllabus. Further, *Kasari* relied solely upon *Barber, supra*, which set forth no universal rule regarding injuries occasioned in an area controlled by the employer.

Therefore, *Kasari* does not clearly determine the threshold issue presented by this appeal, *i.e.*, whether Wolf was within the course of his employment at the time of the accident simply because he was in his employer's parking lot.

In *Gregory* v. *Indus. Comm.* (1935), 129 Ohio St. 365, 2 O.O. 370, 195 N.E. 699, paragraphs one and two of the syllabus, this court held that:

"1. A miner employed in an 'open shop' mine located near a unionized mining district, is subject to a continuous hazard in this day and age greater than is the general public in the community by reason of such condition and environment, which are sufficient to furnish a causal connection between the employment and the injury, causing or contributing to the death of such miner when he is attacked and beaten while in the zone of his employment by men from the nearby union mines, and thus make the case compensable and entitle his dependents to participate in the state insurance fund.

"2. It being the duty of such miner to haul coal from the mine with a pair of ponies and it being his further duty to harness the ponies preparatory to hauling, if, while proceeding to the barn where the animals were kept and while on his employer's premises within approximately two hundred yards of such barn and two hundred and fifty yards from the mine, such miner is injured, such injury is received within the zone of his employment."

Clearly, in *Gregory*, this court made no attempt to set forth a universal rule regarding all employees. The syllabus in *Gregory* is narrowly tailored to the facts of that case.

In *Marlow* v. *Goodyear Tire & Rubber Co.* (1967), 10 Ohio St. 2d 18, 39 O.O. 2d 11, 225 N.E. 2d 241, syllabus, this court held that:

"An employee who, *on his way from* the fixed situs of his duties after the close of his work day, is injured in a collision of his automobile and that of a fellow employee occurring in a parking lot located adjacent to such situs of duty and owned, maintained and controlled by his employer for the exclusive use of its employees, receives such injury 'in the course of, and arising out of' his employment, within the meaning of that phrase in the Workmen's Compensation Act, Section 4123.01(C), Revised Code. * * *" (Emphasis added and citations omitted.)

*Marlow* applies only when an employee is injured on his or her employer's parking lot while leaving work. Thus, in the case at bar, Nobles was clearly within the course of her employment. However, *Marlow* does not place Wolf's actions within the course of Wolf's employment since Wolf was on his *way to* work when the accident occurred.

Many other cases regarding the course-of-employment issue have been decided by this court. However, these cases are too numerous to discuss herein. Suffice to say that, before today, this court has never clearly determined that every employee who is injured on his or her employer's parking lot while on his or her *way to* work receives such an injury in the course of the employee's employment. Today, in silence, the majority makes this determination and, as such, increases an employer's responsibility under the

Workers' Compensation Act where no such liability may have previously existed. I concede that a reading of the cases cited herein supports the determination that, at the time of the accident, Wolf was within the course of his employment.[8] In choosing to extend employers' liability to include responsibility for all employee-on-premises injury, the majority should say so in clear unequivocal terms as a holding of the case.

The following example illustrates the effect of today's decision. A and B are fellow employees who are involved in an automobile accident occurring in their employer's parking lot. At the time of the accident, A was pulling into the lot on his way to work while B was leaving work for the day. Both A and B are permanently and severely handicapped as a result of the accident. Following today's majority opinion, A and B's employer will be responsible for compensating the losses of both employees to the extent required by the Workers' Compensation Act.

I have noted that I dissent on the basis of my dissenting opinion in *Webb*. Thus, even if a written opinion were issued in the case at bar discussing the course-of-employment issue, I would

nevertheless dissent since the determination whether a motor vehicle is uninsured does not depend on Wolf's immunity from suit. Rather, a motor vehicle is uninsured if Wolf's insurer "denies coverage." See R.C. 3937.18 (D).[9]

With regard to R.C. 3937.18(D), I do not understand Justice Resnick's concurring opinion in the case at bar wherein it is stated that Wolf's insurance carrier "* * * *has not denied coverage.*" (Emphasis *sic*.) In doing so, Justice Resnick attempts to distinguish the case at bar from *Webb*. I recognize that the stipulation of facts in the case *sub judice* includes a provision that the carrier has not denied coverage. That is easily explained. The carrier is defending Wolf and claiming for itself as a defense the immunity enjoyed by Wolf. By not "denying coverage," the carrier avoids any "bad faith" claim by its policyholder and, also, meets its duty to defend. So while the carrier does not deny coverage, it simply fails to pay. The result is the same. This is much like what the leaders of Iraq have said, *i.e.*, that "the Americans are not hostages—they are just not free to go."

For all the foregoing reasons, I dissent.

---

[8] See, also, *Merz* v. *Indus. Comm.* (1938), 134 Ohio St. 36, 39, 11 O.O. 414, 415, 15 N.E. 2d 632, 633 ("zone of employment" is the "* * * place of employment and the area thereabout, including the means of ingress thereto and egress therefrom, under the control of the employer."); *Griffin* v. *Hydra-Matic Divi-*

sion, General Motors Corp. (1988), 39 Ohio St. 3d 79, 529 N.E. 2d 436 (employee *leaving* employer's premises).

[9] R.C. 3937.18(D) provides in relevant part:

"* * * [A] motor vehicle is uninsured if the liability insurer denies coverage * * *."